STEPHEN HEXTER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 105467.   Promulgated August 6, 1942.

*Richard H. Levin, Esq.*, and *Harry N. Wyatt, Esq.*, for the petitioner.
*Jonas M. Smith, Esq.*, for the respondent.

484

OPINION.

DISNEY: The prime question presented to us in this proceeding is whether the petitioner is taxable upon the income of a trust set up by him. The deficiency notice recites in that respect, in substance, that the income could be and was used to discharge the trustor's obligations and to pay insurance premiums on policies on his life; therefore it is held that the trustor is subject to tax on the income under section 167 (a) (3) and section 22 (a) of the Revenue Act of 1936. The latter contains the familiar general "definition" or statement as to what is included in income, and need not be set forth at length here. The more particular section, 167 (a) (3), is shown in the margin.[1] Upon brief the respondent not only urges the applicability of the rationale of *Douglas* v. *Willcuts*, 296 U. S. 1, to the discharge of petitioner's household obligations by trust income, and that exactly under the words of section 167 (a) (3) trust income paid premiums on life insurance policies on the trustor, but also suggests that there was reallocation of family income and that *Helvering* v. *Clifford*, 309 U. S. 331, requires taxation thereof to the trustor. The petitioner argues that he may not be taxed on the trust income in the absence of a requirement in the trust instrument requiring application of such trust income either to payment of insurance premiums upon his life or to discharge of his obligations, and urges that the life insurance policies belonged, and had for about three years belonged, wholly to his wife, who, after the trust was set up, paid the premiums from a bank account containing other moneys, sufficient for that purpose, as well as the trust income; also, that the wife was reimbursed by the petitioner for any trust income temporarily used by her for household obligations of the petitioner. On this issue the petitioner has the burden.

We first consider the question as to payment of premiums on life insurance policies on the life of the grantor of the trust. It is wholly

---

[1] SEC. 167. INCOME FOR BENEFIT OF GRANTOR.
  (a) Where any part of the income of a trust—
\*      \*      \*      \*      \*      \*      \*
    (3) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in section 23 (o), relating to the so-called "charitable contribution" deduction) ;
then such part of the income of the trust shall be included in computing the net income of the grantor.

true, as the respondent says, that the text of section 167 (a) (3) plainly provides for taxation to the grantor of a trust, of trust income "applied to the payment of premiums upon policies of insurance on the life of the grantor"; and it is true that here the premiums paid were upon such policies on the grantor's life. Nevertheless, a reading of the cases on the subject convinces us that, even if we assume that trust income paid the premiums, the statute does not apply here, where there appears in the trust instrument no requirement that the trust income be so expended, and where the petitioner had, some three years before the trust was formed, transferred the policies absolutely to his wife, who is also the trustee-beneficiary who paid the premiums. Of the fact of such absolute transfer there can be no doubt, for although the respondent points out that the transfer was to the wife for her lifetime, the instrument of transfer recites that "all rights vested" in the petitioner's wife only during her lifetime, but thereafter "the said rights of owner shall vest" in Lillie Benedikt, and after death of the survivor of the wife and Lillie Benedikt "said rights of owner" shall vest in the executors or administrator of such survivor. It is plain that no rights could revert to the transferor or his estate, and we think that the respondent erroneously invokes *Burnet* v. *Wells*, 289 U. S. 670, as indicating an interest in the policies continuing in petitioner. There the Court said, "The controversy is one as to the boundaries of legislative power", and finding the statute plain, did not construe it. *Louise B. Jonas*, 40 B. T. A. 971 (975). In any event, the case did not involve policies assigned by the assured some year prior to the trust, and did involve a trust instrument making specific provision for use of trust income upon premiums. We find in that case no assistance on this point. Nor do we find it in *Henry A. B. Dunning*, 36 B. T. A. 1222, strongly relied on by the respondent because of the fact that the policies there had been assigned by the trustor and the trust instrument did not require use of trust income upon premiums; for there it is emphasized that the suggestion was made by the trustor that trust income be used for insurance premiums, the beneficiary's husband, the grantor, exercised control over the trust income, the use of trust income for the premiums was of benefit to the trustor, and the beneficiary had never before paid the insurance premiums. All of these elements are negatived in the instant case, where there was no suggestion and no control by the grantor, the wife had for about three years herself paid the premiums, and was amply able to do so from her own funds in the taxable years, and the payments were of no benefit to the grantor. In *Frederick K. Barbour*, 39 B. T. A. 910 (reversed on other grounds, 122 Fed. (2d) 165), we distinguished the *Dunning* case and held the trustor not taxable on trust income where, as here, the beneficiary paid the premiums on a policy on grantor's life, but owned by the beneficiary, and there was no restric-

tion on the use of the trust income. In *George Washington, Sr.*, 36 B. T. A. 75, we commented upon the fact that payments by the beneficiary of a trust of premiums upon policies on the trustor's life were voluntary, not required of the beneficiary by provision of trust, or agreement, and, though finding that the beneficiary may have used some trust income to pay premiums, held the amount of the premiums should not be taxed to the trustor. In *Commissioner* v. *Jergens*, 127 Fed. (2d) 973, the trustor, as here, could never receive anything from the accumulation or proceeds of life insurance, and the court held the trustor not taxable on the amount of premiums paid on life insurance, saying of section 167 (a) (3):

We think it plain, construing the whole section, that it is only when part of the income of the trust is held or, accumulated or held for future distribution to the grantor, or be distributed to the grantor, that premiums paid on life insurance policies donated to the trust are to be considered income of the grantor. In this case the grantor could never receive anything from accumulations or the proceeds of the insurance. To hold that the grantor had an economic interest in policies would require adding conjecture to conjecture as to what might happen in the future. We agree with the conclusions of the Board.

We conclude and hold that the petitioner was not taxable upon the amounts applied upon life insurance premiums.

Nor do we find in the facts here grounds for holding that the trust income should be taxed to the trustor, under the doctrine of temporary reallocation of income within an intimate family group, under *Helvering* v. *Clifford, supra*. True, the family group appears, but there is no right of revocation, no discretion vested alone in the grantor as to use of the trust fund or income, no possible reversion to him. He can benefit in no manner, presently or prospectively, by the trust, but parted permanently from all economic benefit from the corpus and income thereof. To say that because of the facts of husband-wife relationship and joint trusteeship the grantor retained control, despite the fact that a sole beneficiary was cotrustee, is to be blind to the reasons behind the respect paid, in section 167, to the position of one with substantial adverse interest—which the wife here had. With all ownership and co-equal trustee powers in the wife, the fact of family relationship should not, we think, be given the effect desired here by the respondent. In our view the *Clifford* case does not reach so far.

We next consider the taxability to petitioner of trust income with respect to use upon the trustor's legal obligations. There is evidence that the wife paid household bills from the same bank account into which the trustee income was deposited to her credit, and was reimbursed, in part currently and in part later by cash, note and payment thereof at a date after issuance of the deficiency notice, and

the respondent impugns the reliability of such proof of late payment. Except to the extent that, due to petitioner's illness, the wife paid household bills and was currently reimbursed, pursuant to agreement by the petitioner, we do not rest our conclusion upon evidence other than the trust instrument. That agreement made no requirement that trust income be utilized to discharge the trustor's obligations, of any nature. Absent such provision, the mere fact of payment from trust income is not alone sufficient to cause taxation to the trustor, even if we assume, without deciding, that payment from the account into which the trust income went is payment from such income. In *Everett D. Graff*, 40 B. T. A. 920, we distinctly held that lack of agreement or provision of the trust agreement for application of trust income to trustor's obligation was sufficient to cause denial of taxation of trust income to him. There is no contention here that there was such agreement; only such fact of payment in discharge of obligation is urged. *Henry A. B. Dunning, supra,* and *Ralph L. Gray,* 38 B. T. A. 584, are also both to the effect that mere payment, without trust agreement, of trust income upon trustor's debts, is not the criterion and does not require taxation to him. *Jay C. Hormel,* 39 B. T. A. 244 (reversed on other grounds 111 Fed. (2d) 1), refers to the two cases last cited and comes to the same conclusion. It is our opinion that under the trust agreement here involved the petitioner is not taxable upon trust income upon the ground that it was used to discharge the trustor's obligations.

We come now to consider whether the respondent erred, as affirmatively alleged by him by amended answer, in allowing certain items claimed by the petitioner as business expenses. The principal item is salary paid to a secretary, with minor matters, including subscriptions to financial publications, rental on safe deposit boxes, telephone and telegraph. The burden here is of course upon the respondent. The evidence on the point is conflicting. The petitioner in his Federal income tax return for 1936 stated that his principal occupation or profession was that of "Director", for 1937 "Director or investor." He has been in a serious physical condition since 1929, and during the taxable years was ill for weeks at a time. His condition prevented his moving around or walking to any great extent, though at times he could walk around the block, and could go to his office in a taxicab. His ability to write was affected most of the time during the taxable years. However, directors' meetings were held at his home when he was unable to attend. The petitioner testified, with reference to his activities in causing the leasing of advertising space for Buck & Rayner, that he "presumed to do it", that he liked to work, and had been active too long to be a "play boy", that he "wanted to have something to do that would produce results and make a greater profit for

Buck & Rayner." The company received several thousand dollars income through his efforts in that regard. Although one Gundaker was the active executive officer in charge of the business of Buck & Rayner, he consulted the petitioner on practically all important matters, including wage agreements, construction work for tenants, adjustments of rents, and accounts. In an advisory capacity the petitioner was consulted in general on all matters. The corporate bylaws forbade Gundaker to spend any item above $500 without approval of another director, and he practically always consulted the petitioner. Considering all of the evidence upon this issue, we think that it can not be held that the respondent has shown error on his part in allowing deduction for expense of business. Though the petitioner was an investor, and so testified, yet, it does not appear that his activities were confined merely to "doing only what is necessary from an investment point of view." *Foss* v. *Commissioner*, 75 Fed. (2d) 326. The petitioner, in our opinion, in some things went further and comes within the ambit of those cases holding that business activity includes activity in the affairs of companies in which investments are owned. Petitioner to some considerable extent at least partook in the internal affairs of such corporations. To that extent we consider him engaged in business. However, this does not justify allowance of all items asked. The evidence shows that in 1936 to the extent of $378 and in 1937 to the extent of $368.50 items deducted were for subscription to financial news and services; also, that $16.84 in 1936 and $12 in 1937 were for rental on petitioner's personal safety deposit box. These items we consider shown by the evidence to be without basis in activities in the affairs of petitioner's corporations, but rather ordinary expenses of investment, and disallow them. Also, the record shows that the petitioner's secretary, for whose salary deductions were taken of $2,080 for 1936 and $2,120 in 1937, spent time not only on matters relative to corporations in which the petitioner was interested, but handled as well his investments, investments for his wife, and for the Stephen Hexter trust, above herein considered. It is obvious that to some extent her salary should not be charged alone to matters relative to the corporations in which petitioner was interested; and it is upon the ground of such interest and activity and to that extent that we consider him in business. Therefore we allow the secretary's salary only to that extent; and estimating as well as we are able from the evidence, we find that one-fourth of the salary items should be, and they are, allocated to investment matters, and disallow them to that extent.

*Decision will be entered under Rule 50.*