ESTATE OF EDWARD LATHROP BALLARD, DECEASED, ALDEN C. NOBLE AND ELIZABETH BIGLOW BALLARD, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 105033. Promulgated October 1, 1942.

*Edward S. Bentley, Esq.*, for the petitioners.
*Charles P. Reilly, Esq.*, for the respondent.

OPINION.

ARUNDELL: The first question presented is whether or not the corpus of the children's trust is includible in decedent's gross estate under the provisions of section 302 (c) of the Revenue Act of 1926, as amended,[1] or section 302 (d) of the Revenue Act of 1926, as amended.[2]

---

[1] Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside the United States—

\*      \*      \*      \*      \*      \*      \*

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona

Petitioners contend that decedent retained no interest in the children's trust after the amendment of January 31, 1924, by which decedent relinquished his power to amend, modify or revoke the trust and gave such power to his wife. They maintain that the possibility that decedent might again have attained the relinquished power by surviving his wife without her having revoked the trust, can not be treated as an interest in the trust corpus taxable to decedent's estate. Respondent argues that decedent reserved a reversionary interest in the trust so that the trust corpus is includible in decedent's gross estate as a transfer to take effect in possession or enjoyment at or after death within the doctrine of *Helvering* v. *Hallock*, 309 U. S. 106. He asserts that decedent made no completed gift upon creation of the trust or at the time he relinquished to his wife his then power to amend or revoke the trust. Respondent further argues that the value of the children's trust corpus is includible in decedent's gross estate under section 302 (d) of the Revenue Act of 1926, as amended.

We are of the opinion that the possibility of decedent again obtaining the power to amend or revoke the children's trust does not bring the trust corpus into decedent's gross estate. Respondent concedes that there is no question of a transfer in contemplation of death. Thus, if section 302 (c), as amended, is applicable, it must be on the ground that decedent made a transfer intended to take effect in possession or enjoyment at or after his death. Respondent rests his argument relating to section 302 (c) on the contention that decedent's retained contingent power is within the ambit of *Helvering* v. *Hallock*, *supra*, and *Bryant* v. *Helvering*, 309 U. S. 106.

In the *Hallock* and *Bryant* cases and in *Klein* v. *United States*, 283 U. S. 231, the case which the Supreme Court relied upon in *Hallock* and *Bryant*, the grantor-decedents retained interests in the property transferred sufficient to cause the inclusion of the transfers in the gross estates of the grantors as tranfers intended to take effect in possession or enjoyment at or after death. In *Klein* v. *United States*, *supra*, the decedent transferred property to his wife

fide sale for an adequate and full consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title. [As amended by section 803 (a) of the Revenue Act of 1932 and section 404 of the Revenue Act of 1934.]

² (d) (1) To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona-fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death. [As amended by sections 401 and 404 of the Revenue Act of 1934 and section 805 (a) of the Revenue Act of 1936.]

for life but reserved a reversion in fee if his wife should die first. The remainder was to go to his wife if she should survive him. In *Helvering* v. *Hallock, supra,* the decedent created a trust with the income payable to his wife for life. Upon her death the trust was to terminate and the principal and accrued income were to be paid over to the decedent if he survived, but if he did not survive the principal and accrued income were to be paid over to his son and daughter. In the *Bryant* case the trust income was payable to decedent's wife for life and upon her death to the decedent if he survived her. Upon the death of the survivor of decedent and his wife the principal of the trust was to be paid over to the executors or administrators of decedent's estate. The trust instrument also contained a provision giving the power to the grantor and his wife jointly during their lives and to the survivor of them to revoke, modify, or alter the trust instrument. In all three of the cited cases the grantor had a "possibility of reverter" which was cut off by his death. Something passed from the dead to the living because of the death of the grantor.

We find nothing in the present case that decedent gave contingently upon his death or that was transmitted by it. The widow, certainly, took nothing by that event. Her interests in and control over the trust fund were not affected in any way either by the grantor's continued life or by his death. She did not, as in the *Bryant* case, obtain for the first time upon the grantor's death the power alone to alter, amend, or revoke the trust. She had been the sole possessor of that power since January 31, 1924. While decedent lived the wife had the undisputed power at any time to appropriate the trust corpus to her own purposes as absolute owner and thereby deprive decedent, even if he survived her, of any interest in or power over the property. In the *Hallock* and *Klein* cases the death of the decedent was an event which gave to the beneficiaries a dominion over the trust corpus which they did not have prior thereto. That can not be said here, and it is in this respect, in our view, that the fundamental distinction is to be drawn between those cases and this proceeding.

Nor can we say, from the standpoint of the children, that there was any transmission from the dead to the living. Their interests, since decedent's renunciation in 1924 of his power to alter, amend, or revoke, had been held at the sufferance of their mother. The same situation prevailed after decedent's death. The transfer to them was in effect made contingently upon her death, not his. By the grantor's death the children received no "valuable assurance" resulting from a termination of control exercisable by the grantor. See *Porter* v. *Commissioner*, 288 U. S. 436. It is true that if the wife had predeceased the grantor his death would then have assumed controlling

significance. That contingency, however, never occurred. Up until the time he died, as the facts demonstrated, the transfer was complete and irrevocable in so far as decedent was concerned. His death did not terminate any control by him and consequently did not vest control in anyone else.

The Circuit Court of Appeals for the Third Circuit, in *Commissioner* v. *Kellogg*, 119 Fed. (2d) 54, refused to extend the doctrine of *Helvering* v. *Hallock, supra*, to a case where the trust property transferred by the decedent might revert to the decedent not by virtue of the terms of the trust instrument but because of failure of the trust. The *Kellogg* case imposes a logical limitation on the scope of section 302 (c). We think that here, too, the application of the *Hallock* doctrine would cause an unwarranted extension of that section.

This case has another all-important feature distinguishing it from the decided cases involving "possibility of reverter." Here decedent gave his wife every important power over the trust property. She exercised these powers by modifying the trust, revoking it in part, substituting securities, and finally by dividing the trust into two parts, one for the benefit of each of the surviving children. The presence of these powers in decedent's wife, plus their actual exercise by her, makes decedent's "string" on the trust property a practical nullity. Consequently, it becomes apparent that when decedent relinquished, in 1924, his present power to revoke the trust he did not retain an interest in the trust which would subject the trust property to tax under section 302 (c), as amended. See *Estate of Flora W. Lasker*, 47 B. T. A. 172.

Respondent makes a further argument with regard to the children's trust. He claims that the trust principal is includible in decedent's estate under section 302 (d) of the Revenue Act of 1926, as amended. That section applies only where the decedent had at the date of death the power either alone or in conjunction with another person to alter, amend, or revoke a previous transfer of property. Decedent had no such power at the date of his death. At no time after January 31, 1924, did decedent have a present power to alter, amend, or revoke the children's trust. Nor does the fact that decedent, at the date of his death, had a contingent power to alter, amend, or revoke cause the inclusion of the trust property in his gross estate under section 302 (d). *Tait* v. *Safe Deposit & Trust Co. of Baltimore*, 74 Fed. (2d) 851. At the date of his death the power to amend or revoke the trust was vested in decedent's wife. While decedent's wife was living she and she alone could exercise that power.

Respondent has vigorously argued that for all practical purposes decedent had the power to amend or revoke the trust by virtue of his position as husband and head of family. He contends that decedent at all times possessed the power to alter or revoke the trust in con-

junction with his wife because of the marital relationship, which the evidence shows was always harmonious. We reject this contention because there is no indication that decedent had such control over his wife's actions as to permit the finding that he could, by joint action with her, amend or revoke the trust. The evidence shows that decedent's wife talked matters over with him and respected his judgment on financial matters. That does not mean, however, that the familial relation gave decedent the power to amend or revoke the trust. As a matter of fact, the testimony of decedent's widow presented at the hearing indicates that she gave considerable thought to the problems of the children's trust. She had been taught to handle money and took care of her own financial affairs. Thus, we do not feel that *Helvering* v. *Clifford*, 309 U. S. 331, and similar cases involving substantial ownership of trust property by the grantor have any application here. We have heretofore rejected respondent's argument in substantially similar circumstances, *Stephen Hexter*, 47 B. T. A. 483; *Estate of Frederick S. Fish*, 45 B. T. A. 120, 123, pointing out in the latter instance that the doctrine of family solidarity enunciated in the *Clifford* case was rather an economic consideration having to do with reallocation of income within the family group than a presumption that its members will act in accordance with the wishes or dictates of the family head. We hold that no portion of the value of the children's trust is includible in decedent's estate.

The second issue is whether or not decedent's retained power to redesignate the life beneficiary of the Crehore trust causes the inclusion of that life interest in decedent's gross estate under section 302 (c) of the Revenue Act of 1926, as amended, or section 302 (d) of the Revenue Act of 1926, as amended.

There is no question that at the date of his death decedent had the power to deprive the life beneficiary of the Crehore trust of her interest and to designate someone other than himself or his estate as the life beneficiary. This retained power comes within the specific words of section 302 (c), as amended. Petitioners, however, contend that the value of the life interest can not constitutionally be included in decedent's gross estate because the trust was established and the life interest created prior to the passage of the Joint Resolution of March 3, 1931, which was held to be applicable only to transfers after March 3, 1931, by the Supreme Court in *Hassett* v. *Welch*, 303 U. S. 303. We need not decide, however, whether *Hassett* v. *Welch*, *supra*, applies to that part of section 302 (c) of the Revenue Act of 1926, as amended by section 803 (a) of the Revenue Act of 1932, which respondent urges to be applicable here. We are of the opinion that section 302 (d) of the Revenue Act of 1926, as amended, is sufficiently broad to cover the Crehore trust. The reten-

tion of the right to redesignate the life beneficiary was certainly a right to alter or amend the trust. Consequently, the enjoyment of a life interest by decedent's sister was subject at decedent's death to a change through the exercise of decedent's power to designate another beneficiary. This is clearly subject to section 302 (d) of the Revenue Act of 1926, as amended. *Commissioner* v. *Chase National Bank of New York*, 82 Fed. (2d) 157; certiorari denied, 299 U. S. 552; *Commissioner* v. *Bridgeport City Trust Co.* (*Alling*), 124 Fed. (2d) 48; certiorari denied, 316 U. S. 672.

We can see no constitutional objection to the application of section 302 (d), as amended, to the life interest in the Crehore trust. Decedent at any time after the creation of the trust could have relinquished his power to redesignate the life beneficiary. The fact that the trust was established prior to the enactment of the 1924 Revenue Act, in which section 302 (d) first appeared, does not make the application of that section to the instant case a violation of the due process clause of the Fifth Amendment. *Porter* v. *Commissioner*, *supra*.

Petitioners contend that since the power to redesignate the life beneficiary of the Crehore trust remained in decedent's wife after his death, nothing passed from the dead to the living at his death. For purposes of section 302 (d), this transfer in trust was not complete until decedent's death eliminated the string which he had retained on the trust. The fact that the power to designate continued in decedent's widow is not material and the value of the life estate must be included in decedent's gross estate. *Welch* v. *Terhune*, 126 Fed. (2d) 695; *Estate of John H. Storer*, 41 B. T. A. 1156.

Other questions raised by the pleadings were disposed of by the stipulation of the parties, to which effect will be given upon recomputation.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

KERN concurs only in the result.

---

DISNEY, dissenting: I can not agree with the majority opinion on the first issue. In the *Klein* case the taxpayer had a reversion in fee if the wife died first. In the *Hallock* case the trust principal and income reverted to him if the wife died. In the *Bryant* case the trust income reverted to him if the wife died first, and the principal later went to his estate at his death. Also, he had the power to revoke, if he survived. Such interests were held to cause taxation to the estate of the decedent.

*Ballard,* if he survived his wife, also would receive a reversion, that is, of the right to alter, amend or revoke. His death put an end to such a contingency. It is true that his death transmitted nothing to his wife, because he had already conveyed to her the power to alter, amend, or revoke; but it seems to me that his death did transmit rights to the children, that is to say, it freed their interests from the possibility that he, if he survived, might alter, amend, or revoke. Their interests, in other words, were subject to two contingencies, first, that the wife during her lifetime might alter, amend, or revoke, and if she did not revoke, secondly, the husband might, if he survived her, alter, amend or revoke. The second contingency was removed by his death, leaving only the contingency that she might alter, amend, or revoke. Therefore it would appear that by the death of the decedent, although nothing passed to the wife, something passed to the children, because when he died there was left only the contingency that the wife might alter, amend, or revoke. If he had survived, a very serious possibility, that of complete revocation, would have faced the beneficiaries' interests. His death obliterated that possibility and something was transmitted by virtue of his death to the beneficiaries, unless it can soundly be said that, since he had given the right to revoke, etc., to his wife, prior to death, he had no such right to transmit by his death. The fact that he did give it to his wife does not seem to be the answer, because he gave it to her only for her life, retaining that power after her death, and his death prior to hers removed that possibility and transmitted an interest to the beneficiaries in the same way that it would have done so, if he had survived and later died. Certainly, if he had survived, thereby reassuming the right to revoke, his death would have transmitted rights to the beneficiaries. His death prior to any such survival, that is prior to his wife's death, likewise terminated a possibility, the only difference being that it was a mere contingent possibility. Since in the *Klein, Bryant,* and *Hallock* cases, death having put an end to a contingent or reversionary interest, is held to have transmitted a right, and therefore to cause taxation to the estate, the same transmittal and taxation here seem to follow, for the only difference is that there is transmission of a second contingency, instead of a first, to the beneficiaries.

The children could not receive the estate until both father and mother were dead, without exercising the power to revoke. Therefore the deaths of both transmitted rights to the children, the husband's transmission being merely subject to the contingency that the wife did not herself revoke. I dissent.

SMITH and OPPER agree with this dissent.