Estate of Laura B. Alexander, Deceased, Peoples-Pittsburgh Trust Company, Executor v. Commissioner.
Estate of Alexander v. Commissioner
Docket No. 111924.
United States Tax Court
1943 Tax Ct. Memo LEXIS 16; 2 T.C.M. (CCH) 1156; T.C.M. (RIA) 43525; December 27, 1943
*16 Howard O. Rogers, Esq., 2127 Grant Bldg., Pittsburgh, Pa., for the petitioner. J. Harrison Miller, Esq., for the respondent. SMITH Memorandum Opinion SMITH, Judge: The respondent determined a deficiency in estate tax in the amount of $58,305.43. The petitioner alleges that he erred in his determination in that he "has included in the gross estate of decedent for Federal Estate tax purposes the sum of $192,000.00, the value of that part of certain personal property transferred in trust irrevocably by decedent during her lifetime." We adopt as our findings of fact the stipulation of facts submitted by the parties. [The Facts] Laura B. Alexander died a resident of Pittsburgh on December 19, 1939. The Peoples-Pittsburgh Trust Co. is the executor of her estate. It filed an estate tax return for the decedent in the twenty-third district of Pennsylvania with the collector at Pittsburgh. On October 1, 1929, the decedent as grantor executed a trust indenture under which she transferred certain shares of stock in domestic corporations and $193,187.11 in cash to the Peoples-Pittsburgh Trust Co. to have, hold, manage, care for and control the same in trust and to receive and collect *17 dividends or other income therefrom as and when paid and after paying thereout all necessary and proper costs, charges and expenses, including its compensation for services, to pay over the entire net income thereof, $200 per month to each of her four children, if living, and if dead, to their lawful issue and/or legally adopted children and to pay the balance of said income then remaining in monthly instalments to the grantor for and during the term of her natural life. Upon the death of the grantor the trust was to terminate and the corpus thereof was to be divided equally among her four children. Should any of the said children not survive the grantor but leave lawful issue and/or legally adopted children living at the time of the grantor's death, then such issue and/or legally adopted children should in the distribution of the corpus of the trust represent their respective deceased parent and/or legally adopted parent, without designation as between adopted and natural children. In the event of the death of her son, Archibald Houston Alexander, without issue or legally adopted children prior to the death of the grantor then his wife, Helen Alexander, was to receive one-half of *18 the son's stated distributive share in the trust corpus. The trust instrument provides in part as follows: (e) To the extent of One Hundred Ninety-two Thousand ($192,000.00) Dollars in cash or securities, either or both at the option of the Trustee, this trust shall be and remain irrevocable for and during the full term and period of my natural life. The above sum of One Hundred Ninety-two Thousand ($192,000.00) Dollars invested at five per cent net to the beneficiaries will likely produce the monthly payments of income hereinbefore directed to be made to my four children. In case of the revocation of the trust by me to the extent permitted hereunder, the Trustee shall value any securities retained in said fund of One Hundred Ninety-two Thousand ($192,000.) Dollars as of the date of such revocation. In case of the revocation of the trust by me, except as to the above sum of One Hundred Ninety-two Thousand ($192,000.00) Dollars, any surplus income remaining over and above the said payments of Two Hundred ($200.00) Dollars a month to each of my said children shall be paid to me during my lifetime, but if any shortage of income develops through a lowering of interest rates or otherwise, *19 the net income realized from said fund of One Hundred Ninety-two Thousand ($192,000.00) Dollars shall be ratably apportioned in accordance with the provisions of paragraph (a) hereof. As to the remaining trust fund, exclusive of said fund of One Hundred Ninety-two Thousand ($192,000.00) Dollars hereinbefore irrevocably deposited, this trust may be altered, continued in part, or entirely revoked by the Donor at her discretion, at any time during her life, and she may change the distribution of the net income, or any part thereof, as she may see fit. And at the termination or partial termination of this trust, settlement shall be effected by delivery of said securities, or a necessary portion thereof, so assigned and deposited on account, if any of the same shall remain, or at the option of the Trustee, the balance of said estate or portion thereof, as the case may be, may be settled by delivery of the investments, or portion thereof, held at the termination or alteration of the trust, or in cash, or partly in such investments and partly in cash, as said Trustee shall determine, due consideration being given by the Trustee to the wishes and preference of those who are to take the same. *20 * * * * *
(g) The Trustee shall confer with the Donor, or with her selected representative, relative to the investment of any cash forming a part of the corpus of this estate, and likewise shall confer respecting the sale or other disposition of any securities forming a part of the corpus of this estate, and likewise shall confer concerning any contemplated change, reinvestment, sale or transfer of any security forming a part of the corpus of this estate. Any security transferred by the Donor or any investment made by the Trustee shall be without liability to it because of the character of any investment so held or made notwithstanding same are other than those investments which the laws of the State of Pennsylvania expressly authorized and sanction as investments to be made and retained by Trustees. The settlor, Laura B. Alexander, died without having revoked any part of the trust. She left surviving her four designated children, a daughter-in-law, and eight grandchildren. [Opinion] The applicable statute is section 811, Internal Revenue Code, which, so far as pertinent, provides as follows: SEC. 811. GROSS ESTATE. The value of the gross estate of the decedent shall *21 be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States - (a) Decedent's Interest. - To the extent of the interest therein of the decedent at the time of his death; * * * * *
(c) Transfers in Contemplation of, or Taking Effect at Death. - To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * * The respondent *22 defends his action in including $192,000 of the assets of the trust fund in the gross estate upon two grounds, first, that the donor by paragraph (g) of the trust instrument retained control over the trust corpus, and, second, that by reason of the power of revocation reserved in paragraph (e) of the trust instrument she could "at any time during her lifetime, terminate, modify, or revoke the trust agreement." No claim is made by the petitioner that the entire value of the trust fund is excludable from the gross estate. In the estate tax return filed the value of the trust corpus in excess of $192,000 was returned as a part of the gross estate. This was upon the theory that the decedent up to the date of her death had a power to revoke the trust except with respect to trust assets of a value of $192,000. It is the respondent's argument, however, that inasmuch as she had a power of revocation over the value of the trust fund in excess of $192,000 she necessarily had a power of revocation which affected the entire trust estate. The respondent submits: "The donor not having exercised her right to alter, amend or revoke the trust, the $192,000.00 item here in question was a mere legend, *23 no such fund ever having come into existence." And, further, he says: "There was no revocation or alteration of the trust and accordingly no irrevocable setting aside of assets for any purpose." There is no question here but that the trust created by the decedent on October 1, 1929, was a valid trust. The assets in the hands of the trustee were greatly in excess of $192,000 and there was no probability that they would ever fall below that amount. There is nothing invalid or uncommon in providing in a trust instrument that the trust res shall be an undivided or unsegregated part of unascertained assets. Scott on Trusts, p. 438, sec. 76. An undivided interest is a satisfactory trust res. Bogert on Trusts and Trustees, Vol. I, p. 350, sec. 111. Trusts in personal property where specific property is constantly changing, but where the fund remains subject to the duties and burdens of the trust, are not invalid or uncommon. A person who holds the entire legal interest may be trustee for another to the extent of a share of the property and subject thereto for his benefit. Scott on Trusts, p. 440, sec. 77. In Starbuck v. Farmers' Loan & Trust Co., 28 App. Div. 272; *24 51 N.Y. Supp. 58, the owner of a ship in process of construction executed an instrument declaring that he was carrying for his brother's account a one-eighth interest in the ship to be transferred to the brother when he should pay for it by the earnings of the ship, or otherwise. The court held that this was a valid declaration of trust as to a fractional interest in the ship. In Bollestone v. National Bank of Commerce, 299 Mo. 57; 252 S.W. 394, the owner of 1,000,000 shares of certain mining stock stated that he was carrying 10,000 shares for the plaintiff at 75 cents a share. The court held that this was a valid declaration of trust and that it was immaterial that no specific shares were held in trust. In Bay Biscayne Co. v. Baile, 73 Fla. 1120; 75 So. 860, it was held that where a person holding securities of the value of $19,400 undertook to hold in trust for another $15,000 worth of those securities the selection of the particular securities to be made by the trustee, a valid trust was created. It is possible to create separate trusts *25 out of one trust res. There may be separate trusts even though the whole of the trust property be given in one fund to a single trustee. Thus, in United States Trust Co. of N.Y., Trustee v. Commissioner, 296 U.S. 481, it was provided that the trust estate should be divided into three equal shares to which might be assigned undivided interests in the whole or any part of the trust estate, which shares should be for the beneficiaries of each of the trusts, respectively. The court held that for the purposes of Federal income tax there were three trusts. It stated: * * * If the various securities had been divided physically, if new certificates of stock had been obtained for the several beneficiaries, and such certificates and specific bonds and cash had been set aside for each, there would be no room for argument that three separate trusts were not created. But it was not necessary to have such a physical division in order to carry out the clear intention of the parties. An undivided interest in property may constitute the corpus of a trust. * * * We can not doubt from a study of the trust instrument executed by Laura B. Alexander that it was her *26 intention to provide that $192,000 worth of securities or of the cash deposited with the trustee on October 1, 1929, should constitute an irrevocable trust, the income from which up to the extent of $200 per month to each child should be paid to her four adult children during her life. That portion of the trust was irrevocable. We think upon the authorities cited it is entirely immaterial that the settlor did not designate certain of the securities to be held as a trust corpus for the benefit of her children. The respondent makes the further argument that by paragraph (g) of the trust instrument the decedent retained control over the entire trust assets up to the date of her death. The argument is made that because the trustee was under an obligation to confer with the donor relative to the disposition of securities and the investment of the cash she had control of the trust estate up to the date of her death. We think there is no merit in this contention. In Reinecke v. Northern Trust Co., 278 U.S. 339, the Supreme Court said anent this point: Nor did the reserved powers of management of the trusts save to decedent any control over the economic benefits *27 or the enjoyment of the property. He would equally have reserved all these powers and others had he made himself the trustee, but the transfer would not for that reason have been incomplete. The shifting of the economic interest in the trust property which was the subject of the tax was thus complete as soon as the trust was made. His power to recall the property and of control over it for his own benefit then ceased and as the trusts were not made in contemplation of death, the reserved powers do not serve to distinguish them from any other gift inter vivos not subject to the tax. The respondent makes the further observation that the creation of the trust fund by the decedent on October 1, 1929, was in lieu of a testamentary disposition of the property. This was undoubtedly true. This is probably true in a great majority of cases where a person irrevocably transfers in trust a large part of his property during his lifetime. But the property thus transferred is not within the gross estate unless it is made so by the specific provisions of the taxing statute. Transfers in contemplation of death must be included in the gross estate; likewise, transfers which are intended to take effect *28 in possession or enjoyment at or after death. A plausible argument might be made that all of the assets of the trust res involved in this proceeding should be included in the gross estate since they were to be distributed to the beneficiaries and remaindermen upon the death of the settlor. But such argument is foreclosed to the Commissioner by controlling decisions of the Supreme Court. In Shukert et al., Executrices v. Allen, 273 U.S. 545, there was the gift of a remainder interest which was made without reference to the donor's death, although it did in fact vest in possession and enjoyment after his death. It was held, however, not to be a transfer intended to take effect in possession or enjoyment at or after the donor's death and for that reason not to be subject to the tax. In Reinecke v. Northern Trust Co., supra, the court said: In its plan and scope the tax is one imposed on transfers at death or made in contemplation of death and is measured by the value at death of the interest which is transferred. * * * It further said: * * * In the light of the general purpose of the statute and the language of *29 section 401 explicitly imposing the tax on net estates of decedents, we think it at least doubtful whether the trusts or interests in a trust intended to be reached by the phrase in section 402 (c) [Rev. Act of 1921] "to take effect in possession or enjoyment at or after his death," include any others than those passing from the possession, enjoyment or control of the donor at his death and so taxable as transfers at death under section 401. * * * To the same effect is May et al., Executors v. Heiner, 281 U.S. 238. It should further be noted that the trust with which we are here concerned was created prior to March 3, 1931. It is therefore immaterial that the grantor might have received for the period of her life a part of the income which accrued from the irrevocable portion of the trust corpus. Hasset v. Welch, 303 U.S. 303. The facts in the present proceeding are substantially the same as those which obtained in Commissioner v. Kellogg, 119 Fed. (2d) 54; Estate of Flora W. Lasker, 47 B.T.A. 172; Estate of Edward Lathrop Ballard, 47 B.T.A. 784; *30 Estate of Edward E. Bradley, 1 T.C. 518. In all of those cases we held that the value of property which had been transferred, not in contemplation of death, to a trustee and in which the settlor parted with the ownership and enjoyment during his or her lifetime, was not to be included in the gross estate upon the ground that the transfer was to take effect in possession or enjoyment at or after death. Since in the instant proceeding the decedent transferred the ownership and possession of property of the value of $192,000 on October 1, 1929, and since the transfer was not in contemplation of death, the action of the respondent in including the $192,000 in the gross estate of the decedent is reversed Decision will be entered under Rule 50.