ESTATE OF FREDERICK S. FISH, GRACE S. FISH, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 99995. Promulgated September 16, 1941.

*Harold C. Jesse, Esq.*, for the petitioner.
*Harold F. Noneman, Esq.*, for the respondent.

### OPINION.

OPPER: Respondent determined a deficiency of $109,015.72 in the estate tax of decedent Frederick S. Fish. By amended answer the claimed deficiency was increased to $244,230.78.

The questions to be decided in this proceeding are what amounts, if any, of two trust funds established on December 18, 1919, one by decedent and the other by his wife, are includible in decedent's gross estate. It is stipulated that the sum of $10,369.82, income of the trust created by decedent's wife, was due and owing decedent at his death and is taxable as part of his estate. In the amended answer respondent included $50,096.72 as the value of the interest which should be taxed as part of decedent's estate of a third trust, created by decedent on November 28, 1930; but he concedes for the purpose of this proceeding that there is no estate tax liability on account of this third trust.

The facts are stipulated and as so stipulated are hereby found.

Decedent died testate a resident of New York City on August 13, 1936, and his widow instituted this proceeding as his duly qualified and acting executrix in behalf of the estate.

The estate tax return was filed with the collector of internal revenue for the third district of New York.

On December 18, 1919, and in the State of New York, decedent executed a trust indenture whereby he transferred certain securities to the Farmers' Loan & Trust Co. (now known as City Bank Farmers Trust Co.). During the continuance of the trust the entire net income was to be paid to decedent's wife. The trust was to terminate upon the death of decedent's wife unless earlier terminated as provided in

the indenture. Upon the wife's death the trust corpus was to be delivered to such persons or corporations and in such proportions as she should direct and appoint in her last will; or, if such appointment should not be made so as effectively to dispose of the entire corpus, then upon her death the corpus was to be divided into as many shares as there were children, and issue, collectively, of deceased children, of decedent then surviving, and one share was to be paid to each living child and one share to the issue of any deceased child, *per stirpes*. The indenture provided that the trust or any part of it could be terminated at any time during the lives of decedent and his wife by an instrument or successive instruments in writing executed by decedent and his wife, and at any time after decedent's death, if his wife survived him, by an instrument in writing executed by the wife and all the then living children of decedent who should be of full age. In the event of such termination the indenture provided that the trust corpus or any part thereof designated in the instrument should be delivered to decedent's wife free from any trust.

On December 18, 1919, the date of the creation of the trust, the value of the corpus was $1,029,675, and the value of the wife's right to receive the income therefrom during her life was $449,875.30. On August 13, 1936, the date of decedent's death, the value of the corpus was $598,913, and the value of the widow's right to receive the income therefrom for the balance of her life was $148,787.96, leaving a remainder value of $450,125.04.

On December 18, 1919, decedent's wife executed a trust indenture whereby she transferred to the same trustee certain securities. The indenture was identical in all respects, except as to the beneficiaries, with the one executed by decedent on the same date. It gave the income from the trust to decedent for life and the corpus to such persons as he should appoint by his last will or, in default of such appointment, to the living children, and the issue of deceased children, of decedent's wife. The power to terminate was reserved to the settlor and decedent, acting jointly, and after the settlor's death, to decedent and the settlor's mature children, acting jointly. In the event of such termination the corpus was to be delivered to decedent free of trust.

On August 13, 1936, the date of decedent's death, the value of the corpus of the trust created by his wife was $388,634.

At all times subsequent to December 18, 1919, the living children of decedent and his wife have been a son, born in 1889, and a daughter, born in 1892

Neither of the trusts prior to decedent's death had been altered, revoked, terminated, amended, or modified in any way, and they were both in existence at the date of decedent's death. Neither of the trusts was made in contemplation of decedent's death.

Article second of decedent's last will, which was duly admitted to probate, reads as follows:

It is not my intention to exercise the power of appointment conferred upon me by the trust indenture * * * made by my wife, * * * and I direct that this Will shall not operate as a disposition of the trust fund referred to therein, or any part thereof, nor as an exercise of the power of appointment conferred upon me by the said trust indenture.

It is stipulated that the right of petitioner to claim credit for estate taxes paid to the State of New York is reserved for future determination.

In the notice of deficiency respondent included as part of decedent's gross estate the sum of $450,125.04, being the value when he died of the corpus of the trust created by him, $598,913, less the value at that time of the widow's life estate therein, $148,787.96. By his amended answer respondent seeks also to include in the gross estate the value at the date of death of the corpus of the trust created by decedent's wife, or $388,634.

As his first alternative, respondent argues that the value of the remainder interest in a trust executed by decedent during his lifetime should be included in his estate. The trust was subject to termination prior to decedent's death with the consent of his wife, the life tenant. We assume, without deciding, that a power to terminate subjects the estate to tax even though the trust was executed prior to 1936 when, for the first time, the word "terminate" was expressly included in section 302 (d)[1] and although the change from earlier acts was explicitly fashioned as prospective only.[2] Such a construction, which accords with that applied in respondent's regulations,[3] would be based

[1] Revenue Act of 1936—
SEC. 805. ESTATE TAXES—REVOCABLE TRANSFERS.

(a) Section 302 (d) (1) of the Revenue Act of 1926, as amended, is amended to read as follows:

"(d) (1) To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona-fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death."

[2] [SEC. 805.] (b) Except in the case of transfers made after the date of the enactment of this Act, no interest of the decedent of which he has made a transfer shall be included in the gross estate under such section 302 (d) (1) unless it was includible under such section before its amendment by this section.

[3] Regulations 80 (1937 Edition), art. 20 (in part)—

The third change made in the subdivision by the Revenue Act of 1936 consisted of the addition of the words "or terminate" following the words "to alter, amend, revoke." Such addition is considered but declaratory of the meaning of the subdivision prior to the amendment. A power to terminate capable of being so exercised as to revest in the decedent the ownership of the transferred property or an interest therein, or as otherwise to inure to his benefit or the benefit of his estate, is, to that extent, the equivalent of a power to "revoke," and when otherwise so exercisable as to effect a change in the enjoyment, is the equivalent of a power to "alter."

upon expressions of the legislative viewpoint [4] that the addition of the word "terminate" was no more than declaratory of existing law. *Mellon* v. *Driscoll* (C. C. A., 3d Cir.), 117 Fed. (2d) 477; certiorari denied, 313 U. S. 579.

We also assume that although this trust was created in 1919 and subdivision (d) first acquired its present form in 1926,[5] the expressly retroactive aspect [6] of that subsection would render it applicable,[7] provided only that termination was possible by the grantor alone or with the consent of a nonadverse interest. *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339; *Chase National Bank* v. *United States*, 278 U. S. 327. The question still remains whether the stipulation for the wife's consent imports an adverse or a nonadverse interest.

Respondent's argument for the latter view is twofold. He says first that under the concept of family solidarity and in view of the wife's other interests, it can not be assumed that she would fail to comply with a request by decedent. Such a doctrine would proceed further than seems warranted by any principle so far established. Even under such decisions as *Helvering* v. *Clifford*, 309 U. S. 331, the concept of family unity is an economic consideration rather than one of conduct or behavior. The inclusion in the husband's income of that derived from a trust of which members of his family are the beneficiaries results more from the view that family finances are a single unit generally furnished by the husband or father than that the action of individual members of the family group will necessarily accord with the dictates of its head. So much it seems to us appears from the multitude of cases decided under sections 166 and 167 and involving the adverse-interest concept where this Board and the courts, after the *Clifford* case as well as before, have uniformly refused to treat the wife's as a nonadverse interest if she has in fact a legally unfettered command over the trust income. E. g., *Paul W. Litchfield*, 39 B. T. A. 1017, 1021; *Smith* v. *Commissioner* (C. C. A.,

---

[4] House Rept. 2818, 74th Cong., 2d sess., p. 10.

[5] Revenue Act of 1926—

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

    \*      \*      \*      \*      \*      \*      \*

(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. \* \* \*

[6] SEC. 302. (h) Except as otherwise specifically provided therein subdivisions (b), (c), (d), (e), (f), and (g) of this section shall apply to the transfers, trusts, estates, interests, rights, powers, and relinquishment of powers, as severally enumerated and described therein, whether made, created, arising, existing, exercised, or relinquished before or after the enactment of this Act.

[7] *Witherbee* v. *Commissioner* (C. C. A., 2d Cir.), 70 Fed. (2d) 696; certiorari denied, 293 U. S. 582.

1st Cir.), 59 Fed. (2d) 56; *Estate of Isaac Fish*, 42 B. T. A. 260; and *Commissioner* v. *Branch* (C. C. A., 1st Cir.), 114 Fed. (2d) 985.

Nor can we say that the mere fact that the husband's consent was necessary to the termination of a reciprocal trust created by the wife constitutes a sufficient control over the trust property to create an inference of helpless compliance by the beneficiary. And this is the only power of control possessed by decedent to which respondent directs our attention as a premise for this view. The power of the purse strings which gave rise to the decisions in such cases as *Rollins* v. *Helvering* (C. C. A., 8th Cir.), 92 Fed. (2d) 390; certiorari denied, 302 U. S. 763, and *Cox* v. *Commissioner* (C. C. A., 10th Cir.), 110 Fed. (2d) 934; certiorari denied, 311 U. S. 667, was found within the instrument itself and was of a nature and extent commensurate with the control which the courts there found to exist. Here entirely different considerations would have to effect the interplay of the two interests. Occasion for the termination of her own trust by the wife is not necessarily to be presumed. It results that there is insufficient foundation in these aspects of the present facts for treating the wife as a nonadverse party.

Secondly, respondent argues that the case of *Clarence H. Mackay et al., Executors*, 33 B. T. A. 765, was rightly decided by the Board and in spite of its reversal (C. C. A., 2d Cir.), 94 Fed. (2d) 558, should be followed here. This position can avail respondent nothing for even assuming the correctness of the Board's action, notwithstanding the reversal, the doctrine of the *Mackay* case supports petitioner rather than respondent. There the Board held a remainderman had no adverse interest in the life estates and for that reason these were considered taxable. In the course of the opinion, however, the Board refers to prior decisions in *David J. Lit et al., Executors*, 28 B. T. A. 853; affd. (C. C. A., 3d Cir.), 72 Fed. (2d) 551, and *Louis C. Raegner, Jr., et al., Executors*, 29 B. T. A. 1243. It points out that the justification for the difference in the conclusions reached in these two cases was that in the former a life tenant whose concurrence was necessary for revocation was held to have no adverse interest in the remainder with the result that the value of the remainder was includible in decedent's estate; whereas in the latter the life tenant having also a power of appointment over the remainder was adversely interested in the entire property.

This principle seems to us to dispose of the question of adversity of interest in this proceeding. For here the wife was both life tenant and donee of the power of appointment. Under *Louis C. Raegner, Jr., et al., Executors, supra*, therefore, her participation constitutes an adverse interest and leaves the value of both life estate and re-

mainder outside the scope of decedent's taxable property. We come to the conclusion, therefore, that the value of this trust property is not taxable under section 302.

Respondent argues in the alternative that if the value of the trust created by decedent is not to be taxed, then the value of the trust which his wife created at the same time and as part of the same transaction should be included in his estate under the reciprocating theory of such cases as *Lehman* v. *Commissioner* (C. C. A., 2d Cir.), 109 Fed. (2d) 99, affirming 39 B. T. A. 17; certiorari denied, 310 U. S. 637, and *Purdon Smith Whiteley*, 42 B. T. A. 316. In this contention we think respondent should be sustained. The facts here are not distinguishable in principle from those present in the *Lehman* case. The two trusts were clearly reciprocal; the property of the wife was in effect exchanged for that of the husband; and the rights each received under the trust created by the other were of the unrestricted character not essentially to be distinguished from complete ownership. See *Adriance* v. *Higgins* (C. C. A., 2d Cir.), 113 Fed. (2d) 1013. It is our view, therefore, that for estate tax purposes decedent should be regarded as the creator of the trust of which his wife was the nominal grantor.

In the *Lehman* case a portion of the trust assets could be withdrawn without the consent of any beneficiary, and it was only with respect to so much that the Board considered the estate to be taxable. Here no part of the trust estate was subject to withdrawal except in the event of termination under a provision identical with that discussed in the earlier portion of the present opinion. In this respect our conclusion must nevertheless be dictated by the principle of *Estate of Mary H. Hughes*, 44 B. T. A. 1196, in consideration that, viewing decedent as the true grantor of the trust, he had reserved to himself for life the resulting income. As the *Hughes* case decided, it is inconsequential that the trust was created prior to 1931, and the principle of *May* v. *Heiner*, 281 U. S. 238 and *Hassett* v. *Welch*, 303 U. S. 303, are not now to be followed. Even without regard to his retention of the income, decedent, again in the view that he was in effect the grantor, retained a power of appointment over the remainder which, whether exercised or not, subjects his estate to taxation under the provisions of section 302 (c) and (d). *Commissioner* v. *Chase National Bank of New York* (C. C. A., 2d Cir.), 82 Fed. (2d) 157; certiorari denied, 299 U. S. 552; *Porter* v. *Commissioner*, 288 U. S. 436. Respondent's inclusion of the value of this trust at the date of decedent's death in his taxable estate is accordingly sustained.

It is unnecessary to discuss the further alternative contention that this trust should be considered a part of decedent's estate on an

equivalence of ownership theory comparable to that announced in the *Clifford* case, *supra.* See *H. S. Richardson*, 42 B. T. A, 830; affd., (C. C. A., 2d Cir.) 121 Fed. (2d) 1.

*Decision will be entered under Rule 50.*