Estate of Haydn S. Cole, deceased, Wallace H. Cole, as Executor of Will of said Decedent v. Commissioner. Estate of Mary M. Cole, deceased, Wallace H. Cole, as Administrator v. Commissioner.
Estate of Cole v. Commissioner
Docket Nos. 108285, 108283.
United States Tax Court
1943 Tax Ct. Memo LEXIS 519; 1 T.C.M. (CCH) 405; T.C.M. (RIA) 43014; January 9, 1943
*519 Simultaneous and parallel irrevocable trusts were created in 1931 by decedents, husband and wife, over eight years before death, having as corporate shares of stock of the St. Paul Fire and Marine Insurance Company, part of which was originally purchased by each decedent in 1887. Haydn S. Cole had been a director of the company for many years. The income from each trust was to be paid to the spouse for life, then to their children for life, then to their four grandchildren for life. The trusts will terminate upon the death of the last survivor of the seven persons named. Provisions were made for the death of a beneficiary and for after-born grandchildren and great-grandchildren. Held, the transfers were not made in contemplation of death or intended to take effect in possession or enjoyment at or after death. Held, further, to the extent that the trusts were reciprocal each decedent was the real owner of the corpus and the same is includible in his gross estate under section 811 (c), I.R.C.
Ira C. Oehler, Esq., 143 Endicott Bldg., St. Paul, Minn., and Stan D. Donnelly, Esq., for the petitioners. Franklin F. Korell, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact *520 and Opinion The respondent determined deficiencies of $27,198.70 and $10,174.49 in the estate taxes of the estates of Haydn S. Cole and Mary M. Cole, respectively. The issue common to both cases is whether or not the sums of $157,850 and $68,100 should be included in the gross estates of Haydn S. Cole and Mary M. Cole, respectively, such sums representing the fair market value, at the date of death, of 700 and 300 shares, respectively, of stock of the St. Paul Fire and Marine Insurance Company. Haydn S. Cole transferred 600 and Mary M. Cole transferred 300 of such shares to trustees on October 8, 1931, by separate deeds of trust. Findings of Fact Certain facts were stipulated and, as so stipulated, are adopted as findings of fact. In so far as they are material to the issue they are substantially as follows: The petitioner, the duly constituted executor and administrator, respectively, of the estates of Haydn S. Cole and Mary M. Cole, both deceased, resides in St. Paul, Minnesota. He filed the estate tax returns for both estates with the Collector of Internal Revenue for the District of Minnesota. On October 8, 1931, Haydn S. Cole executed a trust agreement, hereinafter called *521 the Haydn S. Cole trust, bearing date June 18, 1931, naming himself and Wallace H. Cole as trustees and transferring to them 600 shares of stock of the St. Paul Fire and Marine Insurance Company, hereinafter called the Insurance Company. The agreement provided that the trustees should receive and collect all income and dividends from the corpus and pay them over to Mary M. Cole for and during her natural life upon her death to Wallace H. Cole and Elizabeth Cole Boardman (the children of Haydn S. and Mary M. Cole) or the surviving issue of either of them. After the death of the survivor of Wallace H. Cole and Elizabeth Cole Boardman, the trustees were directed to pay over such income and dividends, share and share alike, to the grandchildren of the trustor then living, or thereafter born, the issue of any deceased grandchild to take its parent's share. The trust was to terminate upon the death of the last survivor of Mary M. Cole, Wallace H. Cole, Elizabeth Cole Boardman and the grandchildren, Walter Whitney Boardman, Jr., Elizabeth Haydn Boardman, Frank Crunden Cole and Wallace Hasbrouck Cole, Jr. Afterborn grandchildren or great-grandchildren were to share equally with those mentioned *522 and described in the trust. If, upon termination of the trust, no issue of Haydn S. Cole were then living, the corpus was to be paid to designated beneficiaries. The agreement was irrevocable and contained a spend-thrift clause. Stock dividends and stock rights became a part of the corpus. The Haydn S. Cole trust contained the following preamble: That, whereas the party of the first part has been a stockholder in the St. Paul Fire and Marine Insurance Company for more than forty years and a director in said company for more than twenty-five years and intends that the stock he now owns in said company remain in his family for many years more and to accomplish that end creates this trust. On October 8, 1931, Mary M. Cole executed a similar trust agreement hereinafter called the Mary M. Cole trust, without the preamble quoted and with her husband as the primary life beneficiary. The other beneficiaries and the provisions relating to them and to the administration of the trust were identical. Haydn S. Cole died testate on February 13, 1939, at the age of 77 and Mary M. Cole died intestate on March 4, 1939, at the age of 74. The decedents were married April 27, 1887 and at all times *523 thereafter resided together as husband and wife until the death of Haydn S. Cole. Haydn S. Cole bequeathed to his wife all of his wearing apparel, household equipment and automobiles; to his son Wallace H. Cole, his army commissions and medals and $20,000, and the residue of his property to his wife for her life and then to his children. On October 8, 1931, the decedents owned 1200 shares of capital stock of the Insurance Company, of which total Haydn S. Cole owned 800 shares and Mary M. Cole owned 400 shares. On October 9, 1931, 600 shares of the 800 shares of the capital stock of the Insurance Company standing in the name of Haydn S. Cole were reissued in the names of Wallace H. Cole, Haydn S. Cole as trustees of the Haydn S. Cole trust. On December 8, 1933, February 19, 1934 and January 28, 1935, Haydn S. Cole transferred to the Haydn S. Cole trust 40, 35 and 25 additional shares, respectively. New stock certificates were issued in the names of the trustees therefor on the date of each transfer. On the date of Haydn S. Cole's death the corpus of the Haydn S. Cole trust consisted of 700 shares of the Insurance Company stock which had a then fair market value of $225.50 per share. *524 On October 9, 1931, 300 of the 400 shares of the capital stock of the Insurance Company standing in the name of Mary M. Cole was reissued in the names of Haydn S. Cole and Wallace H. Cole as trustees of the Mary M. Cole trust. On the date of Mary M. Cole's death the corpus of the Mary M. Cole trust consisted of the said 300 shares of the Insurance Company stock which had a then fair market value of $227.00 per share. No part of the corpus of either of the trusts was included in the Federal state tax return of Haydn S. Cole or Mary M. Cole. Walter Whitney Boardman, Jr., Elizabeth Haydn Boardman, Frank Crunden Cole and Wallace Hasbrouck Cole, Jr., the grandchildren of Haydn S. Cole and Mary M. Cole were born on April 20, 1917, July 6, 1920, May 14, 1922 and July 3, 1925, respectively, and each of them is still living. Haydn S. Cole and Mary M. Cole each became stockholders of the Insurance Company on October 8, 1889, each then owning 15 shares. On June 18, 1931, both Haydn S. Cole and Mary M. Cole were persons of independent wealth. Haydn S. Cole was elected a director of the Insurance Company on January 18, 1904, and continued to be a director until his death. Neither Hadn S. *525 Cole nor Mary M. Cole ever sold any Insurance Company stock. In December, 1915, Haydn S. Cole gave five shares each to his son and daughter. In October, 1937, Haydn S. Cole and Mary M. Cole each gave 20 shares to each of their four grandchildren. In January, 1939, Haydn S. Cole and Mary M. Cole each gave 10 shares to the University of Minnesota for the Haydn S. and Mary M. Cole Orthopedic Fellowship. In December, 1914, Haydn S. Cole and Ira C. Oehler and another organized Investment Service Company, hereinafter called Investment, to deal in securities and among other things the Articles of Incorporation, authorized Investment to "act as agent for other corporations and persons in all lawful business, either in its own name or in the name of such other corporation or person". Investment kept an account in the Empire National Bank and in the First National Bank of St. Paul, each entitled "Investment Service Company Account" in which accounts funds held by Investment for Haydn S. Cole and Mary M. Cole and funds of other persons were deposited. Haydn S. Cole and Ira C. Oehler were persons authorized to draw checks on the above-mentioned bank accounts. The signature of either without *526 counter-signature by any other person was sufficient. Investment acted as agent for Haydn S. Cole from its organization. A bookkeeper-cashier was employed by Investment and a record of all the transactions of Investment with Haydn S. Cole and Mary M. Cole and other persons was kept by such employee. Among the accounts so kept was the account relating to the receipts and disbursements of Haydn S. Cole and Mary M. Cole. The money held for Haydn S. Cole and Mary M. Cole was largely deposited in "Investment Service Company Agency Account" in Empire National Bank, and partly, in First National Bank of Hastings, Minnesota, in an account entitled "Haydn S. Cole and Mary M. Cole." Beginning with the year 1918, at the end of each year, to and including the year 1938, an accounting was prepared by Investment for Haydn S. Cole and Mary M. Cole. The accounting report for the year 1935 shows aggregate property of $157,173.36 and $185,218.44 in the accounts of Haydn S. Cole and Mary M. Cole, respectively, as recorded by Investment. Each such annual accounting prepared by Investment purports to show in detail the property owned by Haydn S. Cole and the property owned by Mary M. Cole at the beginning *527 of the year, separately the changes in investment appear opposite each investment and there is shown the amount of interest, dividends or other income collected. As to each tract of real estate the rental collected for Haydn S. Cole and for Mary M. Cole is shown separately, so also are the taxes, upkeep and other disbursements. The statement includes a summary of the expenditures of each Haydn S. Cole and Mary M. Cole during the year. Each annual statement lists in detail the items of property owned by each at the beginning and at the end of the year, changes in investments by payment or sale and new investments made by each of them during the year. After January 1, 1932 and during the lifetime of the decedents, all of the income from the Haydn S. Cole and Mary M. Cole trusts was paid to Investment and credited to the account of Haydn S. Cole and Mary M. Cole on the books of Investment. The money thus received by investment was deposited by it in "Investment Service Company Agency Account" or "Haydn S. Cole and Mary M. Cole Account" in First National Bank of Hastings, Minnesota, and at all times during the existence of the accounts, Haydn S. Cole was authorized to draw and sign checks *528 against those checking accounts. The checks signed by him were not required to be countersigned by any other officer, employee or agent of Investment. Following the death of the decedents, all of the income from each trust was paid to Wallace H. Cole and Elizabeth Cole Boardman. Haydn S. Cole had no right to withdraw funds of other persons which might be deposited to the credit of or deposited in the account kept by Investment. Mary M. Cole maintained a checking account with the Empire National Bank of St. Paul, Minnesota, from 1926 until the date of her death. The deposits to this account were made with money withdrawn by her from Investment or First National Bank of Hastings and the amounts so withdrawn were charged to her on the Haydn S. Cole and Mary M. Cole account on Investment books, out of which she paid most of the bills for running the Haydn S. Cole and Mary M. Cole household. The bank accounts of Mary M. Cole show yearly deposits ranging from $9,700 in 1937 to a high of $18,336 in 1931. The petitioners paid Minnesota State inheritance taxes of $2,911.25 and $3,272.20 for the estates of Haydn S. Cole and Mary M. Cole, respectively. In his notices of deficiency the respondent *529 included in the gross estates of Haydn S. Cole and Mary M. Cole the sums of $157,850 and $68,100, respectively, representing the value at the date of death of 700 and 300 shares, respectively, of the stock of the Insurance Company, comprising a part of the corpora of such respective estates. The record discloses the following additional facts: Haydn S. Cole was born October 12, 1861, and Mary M. Cole was born June 3, 1864. In 1892 Haydn S. Cole was retired from the United States Army for physical disability (a hernia). In the spring of 1917 he asked to be restored to active duty. He was accepted and became the storage officer of the Port of New York, with the rank of Colonel. In that capacity he had charge of receiving and shipping everything except troops through the Port. In recognition of his services he was awarded a Distinguished Service Medal. In the spring of 1931, Colonel and Mrs. Cole took an automobile trip of 4,000 miles to Texas. In the summer they took a longer automobile trip to Glacier Park and in October of that year they went to California by train to visit their daughter. In 1931, Colonel Cole was president and director of the First National Bank of Hastings. *530 He attended regularly directors' meetings and devoted considerable time to that activity. He was a director of the Insurance Company and also was a member of its investment committee during a part of the time. He was also financial advisor to the Home of the Friendless. Colonel and Mrs. Cole owned several houses and apartments in St. Paul and farms 80 or more miles from that city. In 1931, he and his chauffeur spent considerable time in repairing and painting the properties and he made frequent trips to the farms. He played golf at least three times a week and he and his wife motored a great deal. On many mornings he walked over two miles to the Insurance Company office. He prided himself on the excellent condition of his health. Mentally he was very alert. In 1924, Colonel Cole first consulted his physician, Dr. Richards, who became the family physician of himself and Mrs. Cole. At that time the general and physical check-up showed him to be in good condition. In May, 1926, he next consulted his physician because he had been conscious of extra heart beats. No organic trouble was found so Colonel Cole, who was a very heavy smoker, was advised to stop smoking. He did so and the extra *531 heart beats disappeared entirely. In October, 1929, the physician treated him for a severe lip infection resulting from an accident. A general check-up showed his condition to be normal. In February, 1932, Colonel Cole again consulted his physician. He complained of indigestion. He was found to have gallstones. His physician advised an operation and made a thorough check-up. Colonel Cole was found to be in good condition - a pre-operative requirement. The operation was performed and he had a perfectly smooth convalescence, with no complications. Colonel Cole next consulted his physician in August, 1937, because of a slight bladder trouble. He was found to be in normal condition with a blood pressure of 128. An electro-cardiograph showed a negative action. His physician found him to be exceptionally well preserved for a man of his age. The next visit to his doctor was in April, 1938, due to shortage of breath. He was ordered to decrease his walking, and exercise which he enjoyed greatly. In July and October, 1938, his physician found no change in his condition. In February, 1939, Colonel Cole developed a sudden pain in his left upper chest. He was immediately sent to a hospital. *532 The diagnosis showed a coronary thrombosis, of which he died in a short time. Colonel Cole's father, grandfather and great-grandfather died at the age of approximately 80 years. He himself was intensely interested in the Cole genealogy and spent much time preparing a book on the subject. He took many motor trips to inspect graveyards and records. In 1931 he was actively engaged in this enterprise and published a book (of 214 pages) in 1935. On June 6, 1932, Colonel Cole wrote to Major Robert L. Gerry of New York City, an officer on his staff during World War I, as follows: I am sending you a statement of which I am rather proud. I have been a stockholder of the St. Paul Fire & Marine Company for forty-three years and a director for twenty-eight years, and have had much to do with the company's investments. Very few, if any, of the insurance companies can equal the enclosed statement, as values therein were the actual values on May 14th. Investments are largely municipals I am so confident of the company's continued success that I have put in a trust, which terminates with death of my last surviving grandchild, a (for me) considerable holding of the stock. Mary M. Cole first consulted *533 Dr. Richards in January, 1923. She had hurt her ankle which had been treated by Dr. Wallace H. Cole, an orthopedic surgeon. Dr. Richards treated her for nervousness but found no organic abnormality. She next consulted him in 1926 when suffering from a left shoulder bursitis. After diathermic treatments, she felt much better. In October 1929, she suffered a fractured pelvis which required hospitalization. She recovered from that injury. Dr. Richards saw her in November of that year. She did not again consult a physician until June 1938, when she had a routine check-up with no changes in Dr. Richards' physical findings. In March 1939 she developed acute pneumonia, which proved fatal. The transfers of stock to the trusts on October 8, 1931, by Haydn S. Cole and Mary M. Cole were not transfers made in contemplation of death nor were they intended to take effect in enjoyment or possession at or after death. Opinion VAN FOSSAN, Judge: The single issue before us is whether or not certain shares of stock of the Insurance Company owned by Haydn S. Cole and Mary M. Cole, his wife, should be included in their respective estates. These shares of stock had been made the corpora of trusts established *534 by each of the decedents on October 8, 1931. Both decedents died in 1939. The petitioner, in his capacity as executor of one estate and administrator of the other, contends that the transfers in trust were irrevocable and not in contemplation of death; that they made a final disposition of both income and corpus; that no possibility of reverter remained in the grantor, and that the grantors retained no incidents of ownership or control that might render the corpora of the trusts taxable as portions of the decedents' estates. The respondent defends his action set forth in the deficiency notices on the following grounds: 1. The transfers were made in contemplation of death. 2. The transfers were intended to take effect in possession or enjoyment at or after the grantor's death. 3. The trusts were reciprocal and hence each decedent was in truth and in fact the grantor of the trust in which he (or she) was named the life beneficiary of the income, and accordingly, the corpus is includible in the gross estate of each decedent. The respondent's first ground for including the transfers under consideration in decedents' estates is based on the familiar phrase "in contemplation of death." *535 This issue has been considered and discussed so exhaustively by the Board of Tax Appeals and the various Federal courts that it is unnecessary to cite the many pertinent cases. The issue still remains one fact to be decided upon the evidence submitted in each case. On the basis of the evidence we have found that neither trust was made in contemplation of death. There remain the contentions that the trusts were intended to take effect in possession or enjoyment at or after death and that since the trusts were reciprocal and the income was reserved for life, the ciroira are, therefore, includible in the respective gross estates. The terms of the trust agreements are relatively simple. The essential provisions are these: Each agreement required the trustees to collect all income from the corpus and pay it currently to the spouse of the grantor during her or his natural life. Thereafter, such income was to be paid to their two children (or the issue of a deceased child). After the death of the survivor of the grantor's children, the trustees were directed to pay the income to the grantor's grandchild (or the issue of a deceased grandchild). The trust will terminate upon the death of *536 seven named persons (the life beneficiary, the two children, and the four grandchildren) and the corpus will be distributed to the grantor's greatgrandchildren. Provision was made for the sharing of any after-born grandchild or great-grandchild equally with others of like rank. The trusts were irrevocable. The corpora therein mentioned (shares of Insurance Company stock) were immediately transferred to the trustees and later the Haydn S. Cole trust received additional shares of stock. The trustees then proceeded to function as directed and continued to do so until the deaths of the grantors, which occurred within three weeks of each other. Each of the trusts was created more than eight years before the death of the grantor. We see no basis for holding that the trusts were intended to take effect in possession or enjoyment at or after death, and we have so found. The respondent asserts, however, that the transfers come within the provisions of section 811 (c), Internal Revenue Code, [1] in that the grantors retained for life or for a period not ascertainable without reference to death or for a period which, in fact, did not end before death, the possession or enjoyment of or the *537 right to the income from the trust corpus. *538 The Joint Resolution of March 3, 1931, antedated the creation of the two trusts here in question. By its terms "a transfer under which the transferor has retained for his life * * * (1) the possession or enjoyment of, or the income from, the property * * *" subjected the property to inclusion in the gross estate. Respondent's argument is that the trusts are reciprocal, at least to the extent of 300 shares representing the entire corpus of the Mary M. Cole trust and three-sevenths of the corpus of her husband's trust, and that, therefore, each decedent should be regarded as the real owner of the property of which he was the life-income beneficiary and the property in question should be included in his gross estates. He relies on Lehman v. Commissioner, 109 Fed. (2d) 99, certiorari denied, 310 U.S. 637, affirming 39 B.T.A. 17, and Estate of Frederick S. Fish, 45 B.T.A. 120. In the Fish case a comparable situation was before the Board of Tax Appeals. It was there observed: * * * The two trusts were clearly reciprocal; the property of the wife was in effect exchanged *539 for that of the husband; and the rights each received under the trust created by the other were of the unrestricted character not essentially to be distinguished from complete ownership. The Board held the corpus of the trust includible in the gross estate. Under the holding of the Fish case, each decedent must be regarded, to the extent of 300 shares, as the owner of the corpus of the trust in which he was the life beneficiary and the other decedent the nominal grantor. It follows as to each decedent that the corpus of such property should be included in the taxable estate under that provision of section 811 (c), Internal Revenue Code. Decisions will be entered under Rule 50.
Footnotes
1. SEC. 811. GROSS ESTATE The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States - * * * * *
(c) Transfers in Contemplation of, or Taking Effect at Death. - To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth.↩