## LLOYD'S ESTATE et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8264.

Circuit Court of Appeals, Third Circuit.
Argued May 6, 1943.

Decided March 31, 1944.

Henry S. Drinker, Jr., of Philadelphia, Pa. (Frederick E. S. Morrison and Calvin H. Rankin, both of Philadelphia, Pa., on the brief), for petitioners.

Muriel S. Paul, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and J. Louis Monarch, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

JONES, Circuit Judge.

H. G. Lloyd, the decedent, created a separate inter vivos trust for each of his two sons for life with certain respective trust powers and provisions as to the remainders. The question here involved is whether the settlor thereby transferred interests in property "intended to take effect in possession

or enjoyment at or after his death" within the meaning of Sec. 302(c) of the Revenue Act of 1926.[1] The Commissioner of Internal Revenue held that the transfers were so intended and, accordingly, included the value of the trust properties in the decedent's gross estate for tax purposes. The decedent's executors seek review of the decision of the Board of Tax Appeals which sustained the Commissioner's deficiency determination to the extent of including in the gross estate the value of the remainders in the trust properties after the expiration of the life estates.

The material facts, as stipulated by the parties, were so found by the Board member who heard and decided this case.

The decedent, who died testate on January 21, 1937, left to survive him his wife and two sons. At the time of his death, his elder son was married and had three children, a fourth child having since been born. The younger son was unmarried but married later and has one child.

On April 2, 1919, the decedent had executed two trust indentures which were identical in their terms except that in the one he named his elder son as the beneficiary, while in the other the younger son was the beneficiary. By each instrument he transferred to his wife, as trustee, certain securities, in trust, to accumulate the income until the respective beneficiary reached the age of twenty-five, and thereafter to pay the income to him. The trustee was further directed to pay the respective beneficiary one-half of the trust principal and accumulated income when he reached the age of thirty and the balance of the trust principal when he reached the age of thirty-five. The trust indentures conferred on the respective beneficiaries certain powers of appointment by will, as to the trust properties, and made provision for the disposition of the remainders, should the life beneficiaries not exercise their powers, which it is unnecessary for us now to detail because of the controlling and conclusive substitute provisions made by supplemental indentures to which we shall immediately refer.

In each of the original trust instruments there was reserved to the settlor the power (1) to name a successor trustee in the event of his wife's death, resignation or incapacity, (2) to approve all changes in investment or reinvestment, and (3) to modify or amend the settlements in trust as originally made but not to revoke the same in whole or in part.

On December 27, 1926, the settlor exercised the reserved power last above mentioned, shortly after his younger son became of age. On that date, he executed two instruments, again identical except for the difference in the named beneficiaries. After reciting the reserved power under the original deeds of trust and his intention presently to exercise it, the settlor thereupon substituted for the dispositive clauses of the original deeds provision that thenceforth the income should be payable to the respective beneficiary for life regardless of his age, that the son should have a general power of appointment by will both as to trust principal and as to income and that upon the son's failure to exercise the power of appointment, the trust principal was to

---

[1] Section 302(c) of the Revenue Act of 1926, as amended by section 803(a) of the Revenue Act of 1932 and as further amended by section 404 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev. Code § 811(c), provides:

"Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside the United States.

\*      \*      \*      \*      \*

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title."

be paid to the son's wife and his descendants according to the Pennsylvania intestate laws and, if none such survived the son, then the trustee was to pay over the corpus or principal to the settlor or to his legal representatives in the event of his prior decease.

Mrs. Lloyd, the trustee, died, and shortly thereafter, on January 24, 1935, the settlor executed two more identical instruments modifying the original deeds of trust to the extent of substituting the present trustees to succeed the deceased trustee.

It was stipulated by the parties that neither the original nor the supplemental trust instruments were made in contemplation of death.

At the hearing on the taxpayers' petition before the Board of Tax Appeals, the Commissioner had also contended that the trust estates were includible in the decedent's gross estate under Sec. 302(d) (1) of the Revenue Act of 1926 because of the power reserved by the settlor in the original deeds to modify or amend, although not revoke, the trust settlements. However, the Board member who heard the matter held, on the authority of Day v. Commissioner, 3 Cir., 92 F.2d 179, that the settlor's exercise of the reserved power by the two supplemental instruments of December 27, 1926, had exhausted the power and that it was thenceforth extinct. The Commissioner accepted that ruling and formally published his acquiescence therein. I.R.B. 1942 No. 41. Nor has he petitioned for a review of the Board's decision in such regard. Cf. Helvering v. Pfeiffer, 302 U.S. 247, 58 S. Ct. 159, 82 L.Ed. 231.

The question remaining is whether the possibility of reverter in the settlor or his estate upon a failure of the trusts through the deaths of the life beneficiaries without leaving respective wives or descendants to survive them and without having exercised their general powers of appointment constituted a transfer of interests in property intended to take effect in possession or enjoyment at or after the settlor's death.

From the controlling decisions, it would seem that the criterion for determining whether the transfer of an interest is intended to take effect in possession or enjoyment at or after the transferor's death is whether he retains a string or tie whereby he can reclaim the transferred property or whether he has otherwise reserved an interest whose passing to others is determinable by his death. Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368, the dissenting opinion in Helvering v. St. Louis Union Trust Company, 296 U.S. 39, 56 S.Ct. 74, 80 L. Ed. 29, 100 A.L.R. 1239, and Becker v. St. Louis Union Trust Co., 296 U.S. 48, 56 S. Ct. 78, 80 L.Ed. 35, which was expressly approved and followed in the Hallock case, supra; Klein v. United States, 283 U.S. 231, 51 S.Ct. 398, 75 L.Ed. 996; May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, 67 A.L.R. 1244 (still pertinent to the question here involved despite the amendment of March 3, 1931, 46 Stat. 1516); Reinecke v. Northern Trust Company, 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, 66 A. L.R. 397; and Shukert v. Allen, 273 U.S. 545, 47 S.Ct. 461, 71 L.Ed. 764, 49 A.L.R. 855.

Thus, in Shukert v. Allen, where "The trust in its terms ha[d] no reference to [the settlor's] death but [was] the same and unaffected whether he live[d] or die[d]," the trust property was held not to be includible in the settlor's estate. Later, in Reinecke v. Northern Trust Company, the fact that the inter vivos gift (under certain of the trusts there involved) took the form of a life estate in one with remainder over to another upon the donor's death did not serve to make the priorly executed gift a transfer intended to take effect in possession or enjoyment at or after the settlor's death. And, a little later, in May v. Heiner, which approved and followed the ruling in Reinecke v. Northern Trust Company, it was held that in order to render an inter vivos transfer of an interest includible in the transferor's estate, the passing of the interest must be from the transferor to the living at or after his death. In none of the above cases was the decedent's death the generating cause of a beneficiary's interest in the property transferred by the decedent in his lifetime.

On the other hand, in Klein v. United States, where the grantor's death in his wife's lifetime was the operative fact which enlarged from a life estate to a fee her interest in the lands transferred and thus effected the passing of the remainder from the deceased grantor to his surviving spouse, the property was held to be includible in the grantor's estate. Likewise, in Helvering v. Hallock, whether the trust property would revert to the settlor after

his wife's life estate therein or be payable to his son and daughter depended upon whether the settlor predeceased or survived his wife. Except for the settlor's death within the time limited by the trust instrument in the Hallock case, the son and daughter would have taken nothing from the trust. But they did so take contingently upon the settlor's death. Therefore, the transfer was of an interest intended to take effect in possession or enjoyment at or after death. Rothensies v. Huston (a companion case dealt with in the Hallock opinion) is indistinguishable from the Klein case and was accordingly so ruled. In Bryant v. Helvering (the other companion to the Hallock case) which was cited by the Board member as being presently in point, the interest in the trust property that was there taxed to the decedent's estate was a vested estate in remainder. See 309 U.S. at page 116, 60 S.Ct. at page 450, 84 L.Ed. 604, 125 A.L.R. 1368. Actually the settlor in the Bryant case had made no disposition of the remainder (following the wife's life estate) so that he automatically died seized thereof as a matter of law. The only relation that the settlor's death bore to the remainder interest in the Bryant case was in determining, upon the termination of the life estate, whether the vested remainder would be paid to the settlor in person or to his estate.

We think it is clear that the Hallock case was neither intended to nor did work any change in the test applied in the Klein case for determining whether there had been an inter vivos transfer of an interest intended to take effect in possession or enjoyment at or after the transferor's death. The Hallock case expressly approved and quoted, inter alia (309 U.S. at page 111, 60 S.Ct. at page 448, 84 L.Ed. 604, 125 A.L.R. 1368) from the Klein case as follows: "It is perfectly plain that the death of the grantor was the indispensable and intended event which brought the larger estate into being for the grantee and effected its transmission from the dead to the living, thus satisfying the terms of the taxing act and justifying the tax imposed." Following this quotation the Supreme Court said in the Hallock case, 309 U.S. at page 112, 60 S.Ct. at page 448, 84 L.Ed. 604, 125 A.L.R. 1368, that "By bringing into the gross estate at his death that which the settlor gave contingently upon it, this Court [in the Klein case] fastened on the vital fac-

tor." The "real problem" in the Hallock case, as stated in the opinion for the Supreme Court, was "to determine whether we are to adhere to a harmonizing principle in the construction of § 302(c)" and the Court concluded that the Klein case furnishes such a principle. Then followed the Court's express rejection of the majority opinions in the St. Louis Trust cases because, as the Court expressed it, they had eaten drastically into the principle of the Klein case. On the other hand, the Supreme Court then also expressly approved, as correctly reflecting the law, the minority opinion in the St. Louis Trust cases wherein it had been said that "The decedent's death, operating upon his gift inter vivos not complete until his death, is the event which calls the statute into operation." [296 U.S. 39, 56 S.Ct. 77, 80 L.Ed. 29, 100 A.L.R. 1239] What the Hallock case plainly did was to reestablish the principle of the Klein case in full vigor and not to alter or enlarge it.

So construing the Hallock case this court in Commissioner v. Kellogg, 3 Cir., 119 F. 2d 54, held the trust property there involved not to be includible in the settlor's estate because no interest therein was created in virtue of the settlor's death. The ruling of the Kellogg case has never been overruled. Since the decision below in the instant case, the Tax Court has cited and followed the decision in the Kellogg case a number of times, twice saying of it that "The Kellogg case imposes a logical limitation on the scope of section 302(c)." See Estate of Ballard v. Commissioner, 47 B.T.A. 784, 791; and Estate of Bradley v. Commissioner, 1 T.C. 518, 522. See also Estate of Hofheimer v. Commissioner, 2 T.C. 773; and Estate of Houghton v. Commissioner, 2 T.C. 871.

On the facts material to the principle involved we fail to see how the instant case can be distinguished from the Kellogg case. In fact, by his deeds of trust, the settlor in the present case disposed of the trust property, so far as his control thereof was concerned, even more conclusively than did the settlor in the Kellogg case. In that case the settlor had reserved to himself and his wife successive life interests in the trust estate (created in 1919) with remainder to his children or their descendants payable at certain specified ages and, prior thereto, subject to powers of appointment in the children as to their respective interests in the

trust property. The trust indenture further provided that if all of the settlor's children and their spouses and descendants predeceased the two life tenants, the corpus, upon the death of the surviving life tenant, should go to the grantor's next of kin. Thus the children in the Kellogg case had powers of appointment only in the event that they survived both the settlor and his wife. In the instant case, where the transfers were immediate and complete for the benefit of others (the settlor reserved nothing), the powers of appointment which he gave the life beneficiaries were exercisable by them regardless of whether or not they survived the settlor. Furthermore, in the Kellogg case the powers were special, the donees being limited in their appointments to their spouses and issue, while here the powers are general. The Lloyd sons may appoint as to the entire corpus of the respective trusts to whomsoever they please.

Nor is any distinction to be drawn from the fact that the amendment effected by the Joint Resolution of March 3, 1931, 46 Stat. 1516 (later carried in substance into the Revenue Act of 1932 by Section 803(a) was not retroactively applicable to the Kellogg case. See Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858. Not only were the trusts in the instant case also created prior to the amendment but they made no reservation of a life estate to the settlor,— the situation to which the amendment was limited. Cf. Hassett v. Welch, supra, 303 U.S. at page 313, 58 S.Ct. at page 564, 82 L. Ed. 858. Except for the amendment's specific inclusion of estates where the transferor has reserved to himself a life interest in the property, the meaning of the phrase "intended to take effect in possession or enjoyment at or after his death" would seem to have remained otherwise unaffected.

■ In the present case, the settlor's transfers bore no reference whatsoever to his death. He transferred no interest to anyone contingently upon that event. Whether he lived or died the trusts were "the same and unaffected." Shukert v. Allen. Nothing passed, or was intended to pass, in virtue of the trusts, from the deceased settlor to the living. May v. Heiner. Not even did the fixed trust interest of one beneficiary terminate and that of another begin upon the settlor's death or at any related time. Reinecke v. Northern Trust Company. No interest in the properties was either created or augmented by the settlor's death. Klein v. United States, and Rothensies v. Huston. Nor did a contingent interest in the settlor terminate and vest in others because of the settlor's death. Helvering v. Hallock. As to the whole of the Lloyd trust properties, the transfers were complete when made and, upon the settlor's execution of the supplemental indentures on December 27, 1926, they became irrevocably absolute. The settlor never had a tie or string by which he might draw back to himself the trust properties or any portion of them and, after his exhaustion in 1926 of the limited power to alter but not revoke the trusts, the properties were thenceforth wholly beyond his control or any influence from his death.

In the recent decision by the Tax Court in Houghton v. Commissioner, supra, that court quoted with approval from the Kellogg case to the effect that "the grantor during his lifetime disposed of his interest in the corpus of the trust as well as any man could" and that "no inter vivos trust can ever be made that would not be includible in the grantor's estate for the purpose of taxation if the petitioner's [Commissioner's] view prevails." The same is equally true here. If, perchance, the life beneficiaries should die without leaving respective wives or descendants to survive them and without having exercised their general powers of appointment, which are unlimited as to time, the remotely contingent reversionary interest would vest in the settlor's estate not because it was an intended transfer of the property but because of the failure of the trusts due to contingencies over which the settlor had no control. Cf. Robinette v. Helvering, 318 U.S. 184, 187, 63 S.Ct. 540. 87 L.Ed. 700, where a contingent reversionary interest in the donor (no more remote than in the instant case) was not allowed as a credit in determining the quantum of the gift there subject to tax. In an opinion for the full Board in Estate of Ballard v. Commissioner, supra (filed since the decision below in the instant case), a trust was held not to have been a transfer intended to take effect in possession or enjoyment at or after 'the settlor's death, where "Up until the time he died, as the facts demonstrated, the transfer was complete and irrevocable in so far as decedent was concerned. His death did not terminate any control by him and consequently did not vest control in anyone else." The

same is no less true with respect to the situation here present.

The Board held the present case to be indistinguishable from the Hallock, Huston and Bryant cases, supra, although it did recognize that "certain additional conditions" were present in the instant case, "namely, that the life tenant of each trust die without having exercised a power of appointment, and that he die leaving no surviving wife or issue." But those highly pertinent conditions which made the vesting of the contingent reversionary interests depend upon the death, relicts and actions of others than the settlor, the Board passed over with the comment that "Those conditions make more remote the possibility that the property will come back to the grantor." So much may readily be acknowledged, but what the Board apparently failed to note was that if the contingent reversionary interest should ever vest in the settlor in his lifetime (or after his death for that matter) it would vest only because of the death of the life beneficiaries under the prescribed conditions and not because of or with relation to the death of the settlor.

True enough, the settlor did die possessed of a possibility of reverter because of remote contingencies related to the existence and actions of others over which he had no control. Indeed, the contingent reversionary interest was present by operation of law, even had the settlor made no mention of it, from the very nature of the unavoidable circumstances. The possibility of reverter arbitrarily attached despite the settlor's complete cession of any interest in or control over the properties. It did not attach, however, in furtherance or effectuation of any intent or desire on his part, as evidenced by his transfers. It is our opinion that the trusts here involved did not constitute transfers of interests intended to take effect in possession or enjoyment at or after the settlor's death within the meaning of Sec. 302(c). Whether the value of the decedent's contingent reversionary interest was taxable to his estate under Sec. 302(a) of the Revenue Act as property whereof he died seized we are not called upon either to consider or decide. That question was neither raised nor passed upon in the proceedings now under review.

The decision of the Board of Tax Appeals is reversed.