## COMMISSIONER OF INTERNAL REVENUE v. IRVING TRUST CO.

(two cases).

## SAME v. HALL.

Nos. 99–101.

Circuit Court of Appeals, Second Circuit.

March 5, 1945.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, and Robert Koerner, Sp. Assts. to Atty. Gen., for Commissioner of Internal Revenue, petitioner.

Rudolph L. von Bernuth, of New York City (Morrell S. Lockhart and Henry D. Bulkley, both of New York City, of counsel), for Irving Trust Co., Trustee, respondent.

Charles M. Lyman, of New Haven, Conn., for Harriet B. Hall, administratrix d.b.n., c.t.a. of Hugh M. Beugler, deceased, respondent.

Before SWAN, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The decedent, Hugh M. Beugler, died on July 16, 1939. The respondent, George E. Hall, became the administrator c.t.a. of his estate and upon the death of George E. Hall, while this proceeding was pending, Harriet E. Hall was appointed administratrix in his stead. Beugler established two inter vivos trusts, the first by deed dated October 22, 1927, and the second by deed dated April 5, 1930. The Iriving Trust Company is the trustee under each trust.

Under the first deed of trust, and the escrow letter of even date, the trust was to become effective upon the delivery of a certified copy of a valid decree of divorce of Hugh M. Beugler from his wife Bertha L. Beugler which should not contain any provision for the payment of alimony to her; of an instrument terminating an existing separation agreement between the parties, and a release by her of her rights of dower. These three conditions were fulfilled and the first trust became effective on May 29, 1928. The corpus of the first trust then consisted of 4,000 shares of common stock of Central Hudson Gas & Electric Corporation having a total value of $240,000. Under its terms the trustee was to pay Bertha L. Beugler $150 per month from the income during her life and the balance to the settlor. Upon his death the trustee was to set apart so much of the principal as might be sufficient to produce the in-

come payable to Bertha L. Beugler and was to pay any surplus income to the settlor's issue per stirpes. After providing for payment of the $150 per month to Bertha L. Beugler the first trust deed provided that the principal of the trust was to pass upon the settlor's death to his issue per stirpes and in default of issue to such persons as would be entitled thereto under the laws of the State of New York if the settlor had then died intestate possessed of such property as his personal estate. It was also provided in the first deed of trust that:

"The Trustee may from time to time in its absolute discretion, and as often as it deems advisable to pay over, transfer, convey, assign and deliver to the Settlor all or any part of the principal of the said trust fund, at all times retaining, however, a sufficient Principal Fund to provide the income to be paid to Bertha L. Beugler as aforesaid, and upon such payment or transfer, all obligation of the Trustee in reference to that part of the principal so paid over shall forthwith cease."

Subsequent to May 29, 1928 Beugler married Lois Dale who became his wife Lois Dale Beugler accordingly.

On April 5, 1930 Beugler delivered a letter to the trustee of the first trust requesting the latter to deliver to him certain of the shares of stock of the Central Hudson Gas & Electric Corporation, which then formed a part of the corpus of the first trust, and stating that it was his "purpose to create a new trust with these securities of which you shall also be trustee and which will in all respects be generally similar except that Lois Dale Beugler will be the beneficiary in place of Bertha L. Beugler and will have an annual income of $2500 under the trust created by the new indenture." On the same day Beugler delivered to the trustee the indenture covering the second trust together with the stock he had just received in answer to his request, which had a then market value of $131,250. The provisions of this second trust were similar to those of the first trust except that the settlor's second wife Lois Dale Beugler was to be the beneficiary under the second trust and was to receive an annual income of $2500, instead of $150 per month, during her life and so long as she did not remarry. This trust contained the following provision analogous to the one quoted from the first trust:

"The Trustee, in its absolute discretion, may from time to time, and as often as it deems advisable, pay over, transfer, convey, assign and deliver to the Settlor all or any part of the principal of the said trust fund, at all times retaining, however, a sufficient principal fund to provide the income to be paid to Lois Dale Beugler as aforesaid, and upon such payment or transfer, all obligation of the Trustee in reference to that part of the principal so paid over shall forthwith cease."

On July 12, 1930, in an action brought by Beugler, his marriage with Lois Dale Beugler was dissolved.

The trustee in addition to the shares of Central Hudson Gas & Electric Corporation which it had delivered to Beugler from the corpus of the first trust in order to establish the second trust, from time to time delivered to him, at his request, portions of the corpus of the first trust in securities and cash to the aggregate of $44,992.68.

The trustee never paid any portion of the principal of the second trust to Beugler. On the latter's death on July 16, 1939 he left surviving his third wife, Martha B. Beugler, his daughter Nan B. Vail, and three grandchildren, and also his first wife Bertha L. Beugler and his second wife Lois Dale Beugler, who had not remarried. Martha B. Beugler died on September 12, 1939.

In assessing the estate tax of Beugler the Commissioner included in the gross estate the corpus of each of the trusts after deducting the value of the life estate of Bertha L. Beugler in the first trust and the value of the life estate of Lois Dale Beugler in the second trust. The net value of the first trust incorporated in the estate was $213,958.84, and the net value of the second trust also incorporated in the estate was $26,216.05. Through such inclusions the Commissioner determined a deficiency in estate tax of $27,743.74 which he sought to collect from the Irving Trust Company as transferee because George E. Hall as administrator d.b.n., c.t.a., had no assets with which to pay it.

The Tax Court held that the net value of the two trusts arrived at by deducting the values of the respective life estates was not includible in the decedent's gross estate under Sections 811(c) or 811 (d) (2) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, §§ 811(c), (d) (2). In our opinion this conclusion was right

and the decision of the Tax Court should be affirmed.

Sections 811(c) and 811(d) (2) of the Internal Revenue Code as they existed prior to the amendments of 1931 may be found in Section 302 of the Revenue Act of 1926 as it read at the time of the establishment of the trusts. This section of the Revenue Act of 1926, 26 U.S.C.A. Int. Rev.Acts, page 227, reads as follows:

"Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\* \* \* \* \* \*

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, \* \* \* intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. \* \* \*

"(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, \* \* \* except in case of a bona fide sale for an adequate and full consideration in money or money's worth. \* \* \*"

The Commissioner no longer seeks to invoke subdivision (d) of Section 302 as applicable to the case. His action would seem inevitable for the decedent made no transfer the enjoyment of which "was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke \* \* \*." Therefore, the only question remaining is whether the net principal of the two trusts must be included in decedent's gross estate as transfers intended to take effect in possession or enjoyment at or after his death within the meaning of Section 302(c) of the Revenue Act of 1926 which was the law in effect at the time the trusts were created.

In each of the trusts under consideration the settlor disposed of the entire corpus and left no legally enforcible rights in himself either by way of reversion or otherwise. Whatever the trustee did not grant to him of its own free will would ultimately pass under the deeds of gift either to the settlor's issue or in default of issue to such persons as would be entitled thereto under the laws of the State of New York, if he had died intestate at the time the contingent remainders took effect. No part of either corpus would pass to the settlor under the terms of the deeds of trust. Our decision, therefore, is not governed by Helvering v. Hallock, 309 U.S. 106, 107, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368, because the settlor reserved no interest in himself as the settlor in Helvering v. Hallock had done. Justice Frankfurter thus stated the issue in his opinion in that case at page 110 of 309 U.S., at page 447 of 60 S.Ct.:

"Whether the transfer made by the decedent in his lifetime is 'intended to take effect in possession or enjoyment at or after his death' by reason of that which he retained, is the crux of the problem."

The power in the case at bar was in no respect the property of the settlor but had been vested by him in the trustee. It was purely discretionary with the latter and the settlor could not cause it to be exercised for his benefit even if the exercise would be to relieve his necessities. We said in Herzog v. Commissioner, 2 Cir., 116 F.2d 591, 595, in referring to Helvering v. Hallock:

"Moreover, as we read the opinion in Helvering v. St. Louis [Union] Trust Co., 296 U.S. 39, 56 S.Ct. 74, 80 L.Ed. 29, 100 A.L.R. 1239, no member of the majority or minority of the court suggested that a discretionary power to terminate a trust which was vested solely in the trustee was sufficient to subject the corpus to an estate tax on the ground that it was part of the property of the grantor. While Helvering v. St. Louis [Union] Trust Co., supra, was overruled by Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368, because the contingent reversion retained by the grantor subjected the corpus of the trust to an estate tax, nothing was said about the effect of the discretionary power."

We have found no decision in which a settlor has parted with power to control the application of any part of the corpus and the disposition of it is left to the judgment of the trustee, independent of any prescribed standards, and yet the corpus has been included in the estate because the

settlor might receive a part of the corpus through the exercise of an uncontrolled discretion by the trustee.

In Bankers Trust Co. v. Higgins, 2 Cir., 136 F.2d 477, there was a provision in a trust inter vivos, that deficiencies in income might be taken out of principal so far as might be necessary to maintain the income to the trust beneficiaries at $60,000 per year. Under the terms of the trust that sum was to be paid to the settlor and his wife during their joint lives, irrespective of the actual yield of the corpus. Inasmuch as it was possible to estimate the probable yearly income of the trust, and thus to compute, by the application of mortality tables, the maximum amount of principal necessary to meet the prescribed payments to the beneficiaries this court held that this maximum amount of principal should be included in the estate of the settlor for purposes of taxation. In Blunt v. Kelly, 131 F.2d 632, the Third Circuit required an inclusion in the settlor's estate of the corpus of a trust which under the terms of the trust might be used for the support and maintenance of the settlor if, in the opinion of the trustee, the necessity should arise. In each of these two decisions the inclusion was based on the right of the settlor to require payments to be made out of the trust fund in order to meet his financial needs or to be made on his behalf because of other circumstances set forth in the trust instrument and independent of the mere will of the trustee.

 In a case where the return of any part of the corpus to the settlor will depend solely upon the discretion of the trustee the true test as to its inclusion in the taxable estate of the settlor is whether the trustee is free to exercise his untrammelled discretion, or whether the exercise of his discretion is governed by some external standard which a court may apply in compelling compliance with the conditions of the trust instrument. If the former, the corpus is not subject to taxation as a part of the settlor's estate. In the case at bar, the discretion of the trustee was absolute, and no court could compel its exercise.

Counsel for the Commissioner argue that we are reaching a result that contravenes expression of the Supreme Court in Fidelity-Philadelphia Trust Company v. Rothensies, 65 S.Ct. 508, 510, where Justice Murphy said: "The taxable gross estate, * * * must include those property interests the ultimate possession or enjoyment of which is held in suspense until the moment of the grantor's death or thereafter." But in that case the suspense was occasioned by the reservation of a power of appointment in the grantor. The language quoted must be read in that light. Here the grantor retained no power and reserved no enforcible right. To treat the remainders as a part of his estate because of such language would be to include remainders to persons other than the grantor, which might take effect in the event of his death, even though he retained no control over them and no enforcible right of enjoyment or possession. As was said by the Supreme Court in Reinecke v. Northern Trust Co., 278 U.S. 339, 348, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397, and reiterated in May v. Heiner, 281 U.S. 238, 245, 50 S.Ct. 286, 288, 74 L.Ed. 826, 67 A.L.R. 1244, "we think it at least doubtful whether the trusts or interests in a trust intended to be reached by the phrase * * * 'to take effect in possession or enjoyment at or after his death,' include any others than those passing from the possession, enjoyment or control of the donor at his death and so taxable as transfers at death * * *. That doubt must be resolved in favor of the taxpayer * * *."

 It goes without saying that the joint resolution of March 3, 1931 did not operate retroactively in amending Sec. 302 (c) of the Revenue Act of 1926 so as to include in the taxable estate a transfer under which the transferor retained for life or any period not ending before his death "(1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right * * * to designate the persons who shall possess or enjoy the property or the income therefrom; * * *" (see Chap. 454, 46 Stat. 1516, 26 U.S.C.A. Int.Rev.Acts page 227). Accordingly the amendment does not affect the present case, which must be decided under Section 302(c) of the Revenue Act of 1926 as it stood before the amendment of 1931.

For the foregoing reasons the orders of the Tax Court are affirmed.