**COMMISSIONER OF INTERNAL REVE-
NUE v. SINGER'S ESTATE et al.**

**No. 173, Docket 20448.**

Circuit Court of Appeals, Second Circuit.
April 15, 1947.

L. W. Post, Sp. Asst. to Atty. Gen. (Sewall Key, Acting Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to Atty. Gen., on the brief), for petitioner.

Montgomery B. Angell, of New York City (John Godfrey Saxe, Otis T. Bradley, and George Craven, all of New York City, on the brief), for respondents.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The sole question presented is whether or not an estate tax is collectible upon the principal of an inter vivos trust because the settlor retained a remote contingent power of appointment by deed among members of a restricted class. Two trusts are in suit, both created by the decedent in 1891 as part of an antenuptial agreement with his first wife, Blanche. Upon the decedent's death in 1939, the Commissioner of Internal Revenue determined a deficiency of $508,985.71 in estate tax by including the principal of the trusts in the decedent's gross estate. But the Tax Court held to the contrary, and has thus found an overpayment of $2,294.30 in the tax. The Commissioner seeks review of the resulting judgment.

Both trusts named the settlor as one of three trustees, and he served as such until his death. The first trust provided for a life estate to Blanche, followed by a like estate to the settlor, alone or with certain relatives, in such manner as the trustees should determine, with remainder payable to the settlor's children or issue thereof at such time and in such shares as he and Blanche should by joint deeds appoint, and, in default of such appointment, to all the settlor's children at specified times (attainment of majority for males; that or marriage for females). There were also provisions over in case these dispositions did not take effect. There were, however, three children of this marriage;

and in 1926, the decedent and Blanche by joint deed irrevocably appointed their three children to receive the principal in equal shares after their deaths, the issue of any deceased child to take that child's share.

The second trust was created one day after the first and, except for the omission of the life estate to Blanche, provision for a power in the settlor to appoint the income during his life to any wife of his, and limitation of the power . of appointment among the children to himself alone, is essentially similar to the first trust. (The gift over to children was to all who reached twenty-one, with no reference to the marriage of females.) The decedent, having married a second wife, Suzanne, in 1902, after his divorce from Blanche in 1901, appointed Suzanne to receive two-thirds of the income for life. Then in 1926, the decedent by deed irrevocably appointed to receive the principal after his death the children of his two marriages, the issue of any deceased child taking that child's share, and the principal to be so divided as to equalize the amounts received by each child under the two trusts here involved and a third trust not presently involved.[1]

The decedent's wife Suzanne died before him, and he was married a third time under circumstances not material here. Surviving his death, in addition to his divorced wife Blanche, were: as issue of his first marriage three children and one grandchild, born in 1891, 1895, 1897, and 1925 respectively, and as issue of his second marriage two children and two grandchildren, born in 1905, 1907, 1929, and 1938. The grandchildren were children of living children; there were no deceased issue. As to the controlling English law (as provided in the trust deeds which were made in England), the parties stipulated the testimony of a competent English solicitor which has been accepted by all as stating the legal effect of the various transfers. From this it appears that each of the decedent's children took a vested interest in the trust funds when he reached the age of twenty-one, and that, although this interest would be divested by the exercise by the decedent of his power of appointment, nevertheless no possibility of any reversion to the decedent's estate existed thereafter. And when the decedent, in 1926, exercised the powers of appointment as granted by the trusts, the scheme of distribution which actually governed at his death was completed. But, as the solicitor pointed out, these appointments did not exhaust all possibilities. If all the children of the first marriage and their issue predeceased him, the decedent still had remaining under the first trust a power of appointment over the funds, exercisable only in favor of children of his second marriage and their issue and possible children of possible later marriages and their issue. If all the children of both marriages and their issue predeceased him, he still had under the second trust a similar power, exercisable only in favor of possible children of possible marriages subsequent to the second and their issue. Under the second trust this remote and contingent power was to be exercised by him alone; under the first it was to be exercised by him and Blanche or by the survivor of them.[2]

The Commissioner urges inclusion of all except Blanche's life interest under the first trust and all the assets of the second trust as a transfer intended "to take effect in possession or enjoyment at or after" the settlor's death, within the meaning of these historic phrases as· they have stood from the beginning of the estate tax, now found in 26 U.S.C.A. Int.Rev.Code, § 811 (c). The starting point of present consideration must undoubtedly be Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368, which held

---

[1] The Commissioner has now abandoned his position in the Tax Court that this third trust was subject to the estate tax.

[2] The solicitor cited the following cases as authority for his views: Lambert v. Thwaites, L.R. 2 Eq. 151; Isaac v. Hughes, L.R. 9 Eq. 191; Doe v. Martin, 4 T.R. 39, 100 Eng.Rep. 882; Cunningham v. Moody, 1 Ves.Sr. 174, 27 Eng. Rep. 965; Vanderzee v. Aclom, 4 Ves. 771, 787, 31 Eng.Rep. 399, 407; Duke of Northumberland v. Commissioners of Inland Revenue, [1911] 2 K.B. 343, 354; In re Potter's Will Trusts, [1944] Ch. 70.

taxable a trust establishing a life estate in the grantor's wife, with remainder to the survivor of the grantor and his wife. The Court pointed out that the statute dealt with property interests not technically passing at death, but theretofore created, and indicated that taxability resulted because the grantor's death brought into existence or enlarged the estate of the grantee and thus effected its transmission from the dead to the living. Of the many cases which have struggled with the infinite variations in possible applications of the Hallock principle, this present case is surely as interesting as any. For if taxability here represents a logical conclusion from that principle, as the Commissioner plausibly argues, it surely must be just about its uttermost possible application.

We think it clear, first, that the controlling question here is whether the remnant of the power of appointment added to the life estates makes a change in result which otherwise would not obtain. For the life estates retained in both trusts by the decedent would not make the trust funds subject to the estate tax. This probably undesirable proposition was established by the much criticized case of May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, 67 A.L.R. 1244, which has not been overruled and which we have held to be still binding upon us. C. I. R. v. Hall's Estate, 2 Cir., 153 F.2d 172; Helvering v. Proctor, 2 Cir., 140 F.2d 87, 155 A.L.R. 845. And the 1931 joint resolution of Congress and the amendment of 1932 to § 811(c) specifically reaching transfers where the grantor has reserved a life estate have only prospective application. Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858; C. I. R. v. Irving Trust Co., 2 Cir., 147 F.2d 946. This principle is now recognized by the Treasury, U.S.Treas.Reg. 105, § 81.18, 26 CFR, Cum. Supp., § 81.18; and the Commissioner here does not base his argument upon its repudiation. Rather does he stress the retained power of appointment, asserting that thus the case is brought within the ambit of three recent decisions of the Supreme Court, Fidelity-Philadelphia Trust Co. v. Rothensies, 324 U.S. 108, 65 S.Ct. 508, 89 L.Ed. 783, 159 A.L.R. 227, C. I. R. v. Field's Estate, 324 U.S. 113, 65 S.Ct. 511, 89 L.Ed. 786, 159 A.L.R. 230, and Goldstone v. United States, 325 U.S. 687, 65 S. Ct. 1323, 89 L.Ed. 1871, 159 A.L.R. 1330.[3]

Of these decisions, the most nearly apposite is the Fidelity-Philadelphia (or Stinson Estate) case. This dealt with a combination of a life estate followed by a contingent general power of appointment over the remainder interest. Stating the problem in the first sentence of its opinion, the Court denominated the power as a reversionary interest. The Court explicitly framed the issue in terms of the combination of the life estate and the interest. In the course of the opinion, however, it emphasized that enjoyment or possession occurred at the settlor's death and that the exact pattern of distribution was not known until then. Both the Field and Goldstone cases, supra, discussing the Fidelity-Philadelphia case, stressed the possible reversion to the grantor as the controlling factor in that decision. The Fidelity-Philadelphia case did not overrule May v. Heiner, supra;[4] it made taxability turn on the contingent general power of appointment or on the power coupled with the reserved life estate. In the case at bar the reserved life estate was present. In place of the general power, however, the decedent retained a remote contingent power to appoint among members of a very restricted class—his children by marriages subsequent to his second. This difference between the reserved powers is the crucial point here, and, we believe, justifies a different conclusion as to the taxability of the trusts. A general power of appointment is equivalent to complete dominion over a fund. Fidelity-Philadelphia Trust Co. v. Rothensies, supra; Paul,

---

[3] See also C. I. R. v. Bayne's Estate, 2 Cir., 155 F.2d 475; Dominick's Estate v. C. I. R., 2 Cir., 152 F.2d 843, certiorari dismissed 67 S.Ct. 628; Beach v. Busey, 6 Cir., 156 F.2d 496, certiorari denied 67 S.Ct. 493; Williams v. United States, 2 Cir., 159 F.2d 243; Thomas v. Graham, 5 Cir., 158 F.2d 561; C. I. R. v. Bank of California, 9 Cir., 155 F. 2d 1; C. I. R. v. Spiegel's Estate, 7 Cir., 159 F.2d 257.

[4] Mr. Justice Douglas, concurring with the majority, specifically left open the question of its vitality as a precedent.

Federal Estate and Gift Taxation, 1946, Supp., § 7.23, p. 187; see also Eldredge v. Rothensies, 3 Cir., 150 F.2d 23, certiorari denied 326 U.S. 772, 66 S.Ct. 176; Estate of Martha E. Gaston, 2 T.C. 672, 674. Hence a contingent general power is surely equivalent to a possibility of reverter, or even more, to a general reversionary interest. In the case at bar there was no possibility of any form of reversion to the decedent's estate.[5]

As a matter of fact, once we have decided not to repudiate May v. Heiner, the decedent's death fades into insignificance as an event enlarging or shifting the estates of the grantees; and only in a highly legalistic way can it be considered to bring about their "transmission from the dead to the living." The children all had their vested interests. These would remain unaffected except by a combination of four unlikely events: their own deaths (i. e., the deaths of all of them), the deaths of all their issue, the birth of children to the decedent from a later marriage, and his execution of a divesting deed of appointment. At most, the decedent's own death could operate only negatively, to deprive him of the physical capacity to execute such a deed. And with the first trust, even this would not end the remote possibility, for Blanche, who must join in the deed while they both lived, could act alone after his death. The Fidelity-Philadelphia case appears to have gone to the verge of law; we are not yet persuaded that it authorizes us to go beyond and sweep into gross estate trusts in which such remote, circumscribed, and insubstantial powers as this have been retained. And none of the many discussions of the Hallock case seem to have taken so advanced a position; instead they seem to assume the necessity of some more directly beneficial control.[6]

Some further emphasis is lent the point by an analysis of another case cited by petitioner, C. I. R. v. Estate of Holmes, 326 U.S. 480, 66 S.Ct. 257, holding taxable the principal of a trust whose grantor possessed a noncontingent power to change enjoyment among a limited group of beneficiaries, without beneficial interest in himself. But this decision applies another statutory provision—one not claimed by petitioner as here applicable—§ 811(d), which specifically authorizes the tax where the decedent has at his death the noncontingent power to alter, amend, or revoke the trust. Porter v. C. I. R., 288 U.S. 436, 53 S.Ct. 451, 77 L.Ed. 880; C. I. R. v. Chase Nat. Bank of New York, 2 Cir., 82 F.2d 157, certiorari denied Chase Nat. Bank of New York v. C. I. R., 299 U.S. 552, 57 S.Ct. 15, 81 L.Ed. 407; Holderness v. C. I. R., 4 Cir., 86 F.2d 137. Here there was only a contingent power not in fact exercisable at death, and hence "no economic benefits to shift and support the tax." Helvering v. Tetzlaff, 8 Cir., 141 F. 2d 8, 11. See also Estate of Ballard v. C. I. R., 47 B.T.A. 784, affirmed C. I. R. v. Estate of Ballard, 2 Cir., 138 F.2d 512; Patterson v. C. I. R., 36 B.T.A. 407, affirmed Helvering v. Patterson, 10 Cir., 99 F.2d 1007; Tait v. Safe Deposit & Trust Co. of Baltimore, 4 Cir., 74 F.2d 851, 858.

If, therefore, as appears, the tax is not assessable under a provision directly reaching powers to alter or amend exercisable at death, it would seem not properly claimed under a provision whose purpose is to reach an intended testamentary disposition. Helvering v. Hallock, supra. It appears generally true that now an objective and economic, rather than a subjective, standard of intent, is envisaged, Paul, Federal Estate and Gift Taxation, 1946 Supp., 179; but, even so, a remote power which will actually be exercised only by

[5] A possible taking by devolution of law can be worked out. Since the children had vested interests, their next of kin would take under the trusts if they died childless and intestate; and this would have included the decedent, if surviving. The Commissioner does not urge taxability on this ground, however, and we therefore disregard it. Indeed a similar argument was rejected in C. I. R. v. Hall's Estate, 2 Cir., 153 F.2d 172.

[6] See Eisenstein, The Hallock Problem: A Case Study in Administration, 58 Harv. L.Rev. 1141; Paul, Federal Estate and Gift Taxation, 1946 Supp., § 7.23, p. 168 et seq.; Montgomery, Federal Taxes—Estates, Trusts and Gifts, 1946–47, p. 443 et seq.; Eisenstein, Another Glance at the Hallock Problem, 1 Tax L.Rev. 430; Alexander, Possibilities of Reacquisition and the Federal Estate Tax, 1 Tax L.Rev. 291.

substitutionary deed in the event of a convulsion engulfing all the several living children and grandchildren—an event obviously not within the decedent's natural contemplation—seems far from the type of disposition at which the statute is directed. Of course the matter is not free from doubt; the Supreme Court may feel that the logic of positions already taken requires it to go so far. But on the basis of the precedents to date, we do not believe that result is foreshadowed.[7]

■ As is now usual, perhaps invariable, the parties are at odds as to the extent of our power of review of the Tax Court's decision for the taxpayer, in the light of Dobson v. C. I. R., 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248. Neither are we clear or entirely agreed as to our authority in the premises. Taking our cue from cases such as C. I. R. v. Wilcox, 327 U.S. 404, 410, 66 S.Ct. 546, we have held decisions of the Tax Court reviewable for errors of law. C. I. R. v. Lamont, 2 Cir., 156 F.2d 800, 801, certiorari denied Lamont v. C. I. R., 67 S.Ct. 203; Farid-Es-Sultaneh v. C. I. R., 2 Cir., 160 F.2d 812; cf. The Dobson Rule in the Circuit Courts, 60 Harv.L. Rev. 448. Since, however, not only are some elements of statutory interpretation involved, but also the acts and intent of a decedent grantor, it is still possible to make conflicting arguments as to the nature of the error relied on; thus compare C. I. R. v. Estate of Church, 3 Cir., 161 F.2d 11, one judge dissenting, apparently contra to C. I. R. v. Spiegel's Estate, 7 Cir., 159 F.2d 257; Gordon, Reviewability of Tax Court Decisions, 2 Tax L.Rev. 171, 215, citing cases. As our conclusion accords with that of the Tax Court, we may cite the latter as at least persuasive, without deciding the explicit degree of value which we should accord it.

Affirmed.

[7] The Commissioner cites as applicable and controlling the recently revised regulation, U.S.Treas.Reg. 105, § 81.17, amended by T.D. 5512, 1946-1, C.B. 264, approved May 1, 1946, 11 F.R. 4856. Whether or not it is to be applied to these earlier transactions we do not find it clear-cut or easily understandable; since it is intended to embody the result of the cases we have discussed, it does not add any new principle. But we think respondent is justified in holding unfulfilled the first requirement there stated for taxability—possession obtainable only by beneficiaries who must survive the decedent; and in contending as to the second requirement that the decedent did not possess any interest in the property of the kind there contemplated.